[Civil No. 1840. Filed March 30, 1921.]

[196 Pac. 454.]

# CRUNDEN-MARTIN MANUFACTURING COMPANY et al., Appellants, v. SHIRLEY CHRISTY, Assignee for the Benefit of the Creditors of FRANK E. RICH and CLAUDE E. SCRIVNER, Copartners, Doing Business Under the Firm Name and Style of RICH HARDWARE COMPANY, FRANK E. RICH and CLAUDE E. SCRIVNER, Appellees.

1. STIPULATIONS—COLLOQUY BETWEEN COUNSEL TO CONSTITUTE STIPULATION FOR DISMISSAL OF SUIT AND DISTRIBUTION TO CREDITORS OF BANKRUPT ESTATE.—A colloquy between counsel in a suit instituted by creditors against a bankrupt estate *held* in effect a stipulation for the dismissal of the suit, which authorized the court to summarily distribute the funds of the estate upon the acceptance by the court of a bid made for property in the hands of assignee for benefit of creditor.

2. STIPULATIONS—PARTY HELD TO MEANING WHICH HE KNEW OTHER PARTY SUPPOSED HIS WORDS BORE.—A party in a colloquy in court constituting a stipulation will be held to that meaning which he knew the other party to the agreement supposed his words to bear, if his language may be understood in more senses than one.

3. CONTRACTS—WHAT IS KNOWN TO BE EXPECTED BY ONE PARTY TO CONTRACT IS A CONDITION THEREOF AS RESPECTS OTHER PARTY.—Whatever is expected by one party to a contract, and known to be so expected by the other, is deemed a part or condition of the contract.

4. STIPULATIONS — CONSIDERATION AND MUTUALITY UNNECESSARY.—A stipulation concerning a pending cause in court is an obligation unlike ordinary contracts between parties not in court, since no consideration is necessary to its validity and no mutuality is required, and it is to be construed like other contracts or written instruments *inter partes*.

5. EVIDENCE — UNEXPRESSED INTENTIONS NOT READ INTO STIPULATION BY PAROL.—Unexpressed intentions, motives, or expectations of one of the parties cannot be read into a stipulation by parol evidence.

---

1.    Validity and enforceability of oral stipulations, note, **Ann. Cas.** 1913B, 153.

6. STIPULATIONS—PARTY RELIEVED OF MISTAKE, INADVERTENCE, ETC.—
Trial court can relieve party to a stipulation from the effect of
the stipulation and a waiver therein on the ground of mistake, in-
advertence, or other good cause.

7. STIPULATIONS—FOR DISMISSAL IS VALID.—Courts look with favor
upon stipulations designed to simplify and settle litigation and
save cost to the parties when they are not illegal or contrary to
public policy, and a stipulation for dismissal of a suit is neither
illegal nor contrary to good morals or public policy.

APPEAL from a judgment of the Superior Court
of the County of Maricopa. R. C. Stanford, Judge.
Affirmed.

Messrs. Townsend, Stockton & Drake and Messrs.
Chalmers, Stahl, Fennemore & Longan, for Appel-
lants.

Mr. J. E. Morrison, Mr. T. W. Nealon, and Messrs.
Kibbey, Bennett & Jenckes, for Appellees.

BAKER, J.—The appellants prosecute this appeal
from a judgment of the superior court of Maricopa
county, distributing the funds of the bankrupt estate
of the Rich Hardware Company among creditors
after the payment of the expenses of the assignee and
other incidental expenses.

The parties have already been before this court
concerning an issue growing out of the same statu-
tory assignment for the benefit of creditors as here
involved. On the prior occasion in the case entitled
*In re Rich Hardware Co.*, 21 Ariz. 394, 188 Pac. 875,
the creditors petitioned for the removal of Shirley
Christy as assignee of Frank E. Rich and Claude E.
Scrivner, copartners, doing business under the firm
name and style of Rich Hardware Company, on the
ground of alleged fraud and continued operation of
the business without authorization. This court then
held that there was no right of appeal from an inter-
mediate order of the trial court. Since that decision·

by this court further proceedings have been had in the same matter in the lower court, culminating in the judgment sought to be reviewed by this appeal.

In view of the disposition which we have concluded to make of the case, we do not deem it necessary or proper to recite in detail the various facts or circumstances which took place at the trial. We have carefully examined the papers, and are satisfied that one material fact is conclusive of the case.

The trial court found the following fact:

"And it appearing to the judge of this court that the Crunden-Martin Manufacturing Company and others, petitioners herein, acting through their counsel, Townsend, Stockton & Drake, and Chalmers, Fennemore, Stahl & Longan, and Frank E. Rich, acting through his counsel, Thomas W. Nealon, and Claude E. Scrivner, acting through his counsel, Kibbey, Bennett & Jenckes, have heretofore in this proceeding and in open court stipulated and agreed that, in the event the said C. E. Scrivner should waive his right to the purchase and the sale made of the stock and assets of the Rich Hardware Company under sale made by the assignee aforesaid, and further bids should be received in excess of $2,000 more than the sum of $9,200 for which said sale was made to the said Scrivner, that said distribution should be made by the judge of this court, and that all proceedings heretofore instituted by them should be dismissed saving only the prosecution of the appeal of Crunden-Martin Manufacturing Company et al., in that certain cause docketed in this court No. 11667, and it further appearing that the bid of Thomas J. Smith in the sum of $12,000 was made and accepted, and said sum paid into court for distribution."

The stipulation so found by the court is not a part of the judgment itself, but is recited to show why the court proceeded summarily to distribute the funds of the estate.

The appellants take exception to the finding as not supported by the evidence. It appears from the rec-

ord that the case was set for hearing on December 1st. C. E. Scrivner prior to the hearing had made a bid of $9,200 to the assignee for all the remaining effects and property of the bankrupt estate. Soon after the hearing commenced the court announced that other bids might be made, and thereupon Thomas J. Smith, in open court, made a bid of $12,000 for the same effects and property. The record shows that the following colloquy occurred between counsel:

"Mr. Stoneman: We take it that when the matter is settled between Mr. Nealon and his clients as to which one shall receive this property on this bid [Smith bid] that minute—that the assignee shall thereupon be discharged, and the suit pending against him shall be dismissed.

"Mr. Morrison: Including the appeal in the Supreme Court.

"Mr. Nealon: I am not a party to the case in the Supreme Court whatever.

"Mr. Stoneman: My statement refers to you in so far as the answer which you served on us this morning. . . .

"Mr. Nealon: In that case, if your honor pleases, so far as my client is concerned, he is willing to end the litigation here if the bid is accepted and the deal is consummated, and as far as he is concerned the matter then may be dismissed.

"Mr. Stockton: So far as we are interested in this case, as soon as the court directs the distribution of this money, that is, the proper refund to Mr. Scrivner and to the payment of these creditors in the suit, we are ready for it to be dismissed."

Thereupon court and counsel considered and discussed the allowance of various items of expense which had been incurred during the administration of the estate, and finally the court announced as follows:

"The bid of Mr. Smith of $12,000, as outlined in this bid as submitted, is accepted, and there is nothing else to do except for the assignee to turn over the assets."

C. E. Scrivner waived all rights under his bid. The amount of the Smith bid was subsequently paid into the hands of the clerk of the court. The court continued the further hearing of the matter until January 9th, and on that day appellants questioned the stipulation and offered parol testimony tending to explain it away. The court refused to hear the evidence.

Counsel for appellants in their reply brief say:

"We do not assign as error any supposed finding that a stipulation was entered into. But we do assign as error the refusal to permit us to show the nonexistence of such stipulation, and assign as error the summary discharge of the assignee and cancellation of his bond, because such discharge was error, unless a stipulation can be shown to exist."

We think that the colloquy between counsel was in effect a stipulation for the dismissal of the suit instituted by the appellants, and that the finding is a correct presentation of the actual occurrence. All parts of the colloquy are to be considered together as making up the stipulation. Counsel for appellants knew that opposing counsel meant and intended that the suit should be dismissed and the assignee discharged upon the acceptance of the Smith bid and the payment of the money. There is no ambiguity about their language. If counsel for appellants did not intend such result, ought he not to have frankly said so? He must have realized that the court and opposing counsel understood from his language that he was consenting to the terms so plainly stated, and the rule of law, as well as ethics, is that a party will be held to that meaning which he knew the other party to the contract supposed his words to bear if his language may be understood in more senses than one. In other words, whatever is expected by one party to a contract and known to be so expected by

the other is to be deemed a part or condition of the contract.   See 3 Parsons on Contracts (8th ed.), bottom pp. 491, 617, 658; 6 R. C. L., p. 855, and cases cited in footnote.

A stipulation concerning a pending cause in court is an obligation unlike ordinary contracts between parties not in court.   *Ward* v. *Clay,* 82 Cal. 508, 23 Pac. 50, 227; *Barry* v. *Mutual Life Ins. Co.,* 53 N. Y. 536.   Since no consideration is necessary to its validity (*Howe* v. *Lawrence,* 22 N. J. L., 104), no mutuality is required, and it is to be construed like other contracts or written instruments *inter partes.*   20 Ency. Pl. & Pr., p. 657.

It is, of course, possible that counsel in making the stipulation had in mind a mental reservation to the effect that he could thereafter contest the discharge of the assignee and the distribution of the funds, but there is no intimation of such reservation in the stipulation, and counsel seems to stand alone in claiming that advantage, since the trial judge and opposing counsel have interpreted the stipulation to mean what its language imports, viz., that the suit should be dismissed and the funds summarily distributed.   If counsel intended to stipulate something else, he should have expressed such intention, and he cannot complain if he was taken at his word.   The written evidence in the stipulation is in direct conflict with what counsel claims it to have been, and he desired to introduce parol evidence sustaining his claim.   It was not permissible to do this.   The unexpressed intentions, motives, or expectations of one of the parties cannot be read into a stipulation by parol evidence. 20 Ency. Pl. & Pr., p. 659.   The trial court could have relieved the appellants from the effect of the stipulation and waiver because of mistake, inadvertence, or other good cause, but such action was not invoked. 20 Ency. Pl. & Pr., p. 662.

Courts look with favor upon stipulations designed to simplify and settle litigation and save cost to the parties when they are not illegal or contrary to public policy, and surely it cannot be claimed that a stipulation for the dismissal of a suit is either illegal or contrary to good morals or public policy. Such stipulations are frequently entered into between litigants.

In *Dubuc* v. *Lazell, Dalley & Co.*, 182 N. Y. 482, 75 N. E. 401, the court of appeals reaffirmed the principles declared by Judge EARL, in *Matter of New York, L. & W. R. R. Co.*, 98 N. Y. 447, that:

"Parties by their stipulations may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce. They may stipulate away statutory, and even constitutional rights. They may stipulate for shorter limitations of time for bringing actions for the breach of contracts than are prescribed by the statutes; such limitations being frequently found in insurance policies. They may stipulate that the decision of a court shall be final, and thus waive the right of appeal, and all such stipulations not unreasonable, not against good morals, or sound public policy, have been and will be enforced; and generally all stipulations made by parties for the government of their conduct, or the control of their rights, in the trial of a cause, or the conduct of a litigation, are enforced by the courts."

It is but fair for us to say that we do not think, for a moment, that there was any intention upon the part of counsel to mislead or deceive the court, or to mislead or deceive opposing counsel, or that counsel are now willfully attempting to evade or escape from the effects of a stipulation which they have entered into. There is nothing in the record which tends in the remotest degree to justify such a conclusion. The good character and high standing at the bar of counsel is a perfect guaranty of their good faith and honest purposes in this court and in the court below.

It is simply a case where counsel honestly differ as to the effect of the language used in stating what was intended and urging their construction of the matter.

We think, however, that the agreement disposed of the action absolutely, and that there was nothing further to litigate, and we therefore affirm the judgment.

ROSS, C. J., and McALISTER, J., concur.