991 P.2d 262

**In re the Marriage of Timothy L. HARRIS, Petitioner– Appellee,**

**v.**

**Linda T. HARRIS, Respondent–Appellant.**

**No. 1 CA–CV 98–0501.**

Court of Appeals of Arizona, Division 1, Department E.

June 15, 1999.

Review Denied Jan. 4, 2000.*

---

* Vice Chief Justice Jones voted to grant the Petition for Review.

M. Josephine Sotelo, Yuma, Attorney for Appellee.

Janet H. Metcalf, Yuma, Attorney for Appellant.

## OPINION

WEISBERG, Judge.

¶ 1 Appellant, Linda Harris (wife) appeals from the denial of her motion for new trial. For the reasons stated below, we reverse and remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶ 2 The parties were divorced in April 1992 after almost 25 years of marriage. Prior to that time, Timothy Harris (husband) had retired from the United States Navy. As part of the division of community property agreed to by the parties, Linda Harris (wife) was awarded "[o]ne-half of·[husband's] Military Retirement, not including [husband's] disability payment, payment to begin May 1, 1992."[1]

¶ 3 On March 11, 1998, wife filed a petition to enforce the dissolution decree, complaining that husband had sought and obtained a higher disability·rating from the Veterans' Administration some years after their divorce that had the effect of increasing his disability benefits and, correspondingly, decreasing his non-disability retirement pay. As a result of husband having "converted his retirement pay to almost 100% disability pay," the payments wife then received were greatly reduced from what they had been at the time of the original decree. Wife, therefore, sought an order enforcing the original decree by requiring husband to pay her fifty percent of his military retirement benefits based upon the disability rating that applied to him as of the date of the 1992 decree. She also sought judgment against husband for the difference between what she had received and what she would have received had a portion of his 1992 retirement pay not been converted to disability benefits.

¶ 4 In response, husband filed a motion to dismiss for lack of jurisdiction in which he argued that *Mansell v. Mansell,* 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989), precluded the trial court from granting wife the relief requested. The trial court agreed with husband and dismissed wife's petition in an unsigned minute entry order. Wife then filed a motion for new trial pursuant to Rule 59(a)(8) of the Arizona Rules of Civil Procedure, which the trial court denied in a final signed judgment. It is from that order that wife appeals. We have jurisdiction pursuant to Arizona Revised Statutes Annotated section 12–2101(F).

¶ 5 On appeal, wife has not claimed any portion of the disability pay that husband was receiving when the original decree was entered. Rather, she seeks the value of the non-disability retirement money she was awarded by the 1992 decree.

---

1. According to wife, husband's total military retirement pay at the time of the divorce was

$2251.00 per month, with $655.00 being disability pay and $1596.00 being non-disability pay.

## STANDARD OF REVIEW

¶ 6 We review a dismissal for lack of jurisdiction *de novo. See Bils v. Nixon, Hargrave, Devans & Doyle,* 179 Ariz. 523, 525, 880 P.2d 743, 745 (App.1994). We review a trial court's denial of a motion for new trial for a clear abuse of discretion. *See Styles v. Ceranski,* 185 Ariz. 448, 450, 916 P.2d 1164, 1166 (App.1996).

## DISCUSSION

### I.

¶ 7 When the divorce decree was entered in 1992, husband's disability rating was sixty percent.[2] In 1996, husband "was awarded a 30% disability as a result of post-traumatic stress disorder" that resulted in "a new combined disability evaluation" of seventy percent. Finally, in 1997, the Veterans' Administration determined that he was entitled to the "payment of disability benefits at the 100% rate," transforming all of husband's non-disability retirement pay into disability benefits.

¶ 8 Husband maintains that, because wife was only entitled by the decree to receive fifty percent of his non-disability retirement pay and because *Mansell* holds that she cannot claim any community share in his disability benefits, she is no longer entitled to receive the amount of money she was awarded by the 1992 divorce decree. We disagree, however, relying in large part upon *In re Marriage of Gaddis,* 191 Ariz. 467, 957 P.2d 1010 (App.1997), *cert. denied,* 525 U.S. 826, 119 S.Ct. 73, 142 L.Ed.2d 57 (1998), *rehr'g. denied,* 525 U.S. 1013, 119 S.Ct. 532, 142 L.Ed.2d 443 (1998).

¶ 9 In *Gaddis,* the wife was awarded one half of the husband's "disposable military retirement pay as calculated by the United States Joint Military Service Finance Center." *Id.* at 468, 957 P.2d at 1011. Between March 1994 and June 1995, husband's disposable retirement income ranged between $1,359.00 and $1,870.00 per month, and he forwarded the wife checks ranging from $750.00 to $785.00. *Id.* In October 1995, the husband obtained civil service employment with the federal government, and, pursuant to statutory provision, his monthly retirement pay was reduced by $848.22 to approximately $680.00 per month, one half of which he paid the wife. *Id.* The wife in *Gaddis,* like wife in this case, sought to enforce the terms of the original divorce decree, arguing that her share of the husband's retirement pay should not be reduced because of the reduction in his retirement pay. *Id.* The trial court agreed, and this court affirmed, finding that the husband's new federal employment did not "alter the *value*" of the wife's community property interest in the retirement plan at the time of the decree, when it was distributed by the court and vested in the wife. *Id.*

¶ 10 We observed that the issue decided in *Mansell* was whether military retirement pay that had been waived by the retiree spouse in order to receive veterans' disability benefits could be treated by a state court as property divisible upon divorce. *Id.* at 469, 957 P.2d at 1012 (citing *Mansell,* 490 U.S. at 594–95). The United States Supreme Court concluded that it could not, *id.,* because although the Uniformed Services Former Spouses' Protection Act[3] granted state courts the authority to treat "disposable retired pay" as community property, it specifically excluded from the definition of "disposable retired pay" any amounts waived in order to receive disability pay. *Id.* (quoting *Mansell,* 490 U.S. at 588–89).

¶ 11 While acknowledging that the same exclusion applied to amounts waived in order to receive civil service compensation, we distinguished the facts in *Gaddis* from those in *Mansell* and concluded that a voluntary post-decree reduction in the husband's retirement pay did not automatically warrant a concomitant reduction in the wife's award under the decree. We noted that, unlike the wife in *Mansell,* the wife's interest in the husband's retirement pay *in Gaddis* had been "finally determined on the date of the decree as to [the] amounts which had not at that time been waived." *Id.* at 470, 957 P.2d at 1013. Therefore, the *Gaddis* trial court had not violated *Mansell. Id.*

2. According to husband, this was set by the Veterans' Administration in 1989.

3. 10 U.S.C. § 1408.

¶ 12 In addition, we viewed the amount allocated to the wife by the trial court as her "vested interest" in the divisible marital asset portion of the husband's retirement pay and concluded that the husband, therefore, could not "frustrate" the trial court's decree by "voluntarily waiving retirement benefits which the court had vested in [the] wife" by his unilateral post-decree conduct. *Id.* Relying on the Supreme Court's axiom in *Mansell,* that "domestic relations are pre-eminently matters of state law," *id.* (quoting *Mansell,* 490 U.S. at 587), and on Arizona's strong commitment to the rule that property settlements are not subject to modification or termination "absent express authorization ... or a finding of 'extraordinary circumstances' as contemplated by Rule 60(c)(6)," we concluded that the trial court had not erred in refusing to modify its decree. *Id.* at 469, 957 P.2d at 1012 (quoting *De Gryse v. De Gryse,* 135 Ariz. 335, 338, 661 P.2d 185, 188 (1983)).

¶ 13 While *Gaddis* dealt with a veteran's unilateral post-decree waiver of retirement pay to allow him to obtain civil service employment, its reasoning also applies in the present case where husband's unilateral post-decree waiver of non-disability retirement pay was executed in order to permit him to receive additional disability benefits. Here, as in *Gaddis,* the trial court's 1992 decree properly distributed to wife fifty percent of the divisible marital asset that was husband's non-disability retirement pay. And, as we stated in *Gaddis,* we will not allow a "former spouse, post-decree, 'to transform retirement benefits constituting community property to [other, non-retirement] benefits constituting separate property.'" *Id.* (quoting *McNeel v. McNeel,* 169 Ariz. 213, 215, 818 P.2d 198, 200 (App.1991)). We therefore conclude that *Mansell* does not preclude wife from obtaining the relief requested, and that the trial court's dismissal of her petition on that ground was a clear abuse of discretion.

## II.

¶ 14 On remand, the trial court must address whether the decree established a right

in wife to a fixed amount of husband's military benefits.[4] Touching upon this issue, the trial court recognized that the decree did not clearly state which result was intended,[5] but apparently thought it significant that wife could not testify that she had expressly *negotiated* to receive a fixed dollar amount from the retirement pay. We address this issue now because, on remand, the trial court must consider *all* of the surrounding circumstances.

¶ 15 Separation agreements, like other contracts, are to be given a reasonable construction so as to accomplish the intention of the parties. *Beaugureau v. Beaugureau,* 11 Ariz.App. 234, 237, 463 P.2d 540, 543 (1970). Contracts are to be read in light of the parties' intentions as reflected by their language and in view of all circumstances; if the intention of the parties is clear from such a reading, there is no ambiguity. *Smith v. Melson, Inc.,* 135 Ariz. 119, 121, 659 P.2d 1264, 1266 (1983). If the meaning remains uncertain after application of primary standards of construction, including consideration of the surrounding circumstances, a secondary rule of construction provides that ambiguity is to be strictly construed against the drafting party. *Insurance Agencies Co. v. Weaver,* 124 Ariz. 327, 329, 604 P.2d 258, 260 (1979). Furthermore, whatever is expected by one party to a contract, and known to be so expected by the other, is deemed a part or condition of the contract. *Crunden–Martin Mfg. Co. v. Christy (Assignment of Rich Hardware Co.),* 22 Ariz. 254, 258–59, 196 P. 454, 456 (1921).

¶ 16 While the decree provides for wife to receive "[o]ne-half of [husband's] Military Retirement, not including Petitioner's disability payment, payment to begin May 1, 1992," it is not clear from the four corners of the document whether the parties' purpose was to adopt a fixed payment that could vary only with cost-of-living increases, or whether it was to be a true fractional interest that would increase or decrease depending on

---

4. We note that the trial court briefly considered this issue but, given its *Mansell*-based conclusion that dismissal was required, did not ultimately decide it.

5. The trial court acknowledged that "two separate interpretations ... [could] be made of the property settlement agreement."

husband's disability payments. Although the trial court acknowledged the ambiguous language, it failed to consider, for example, whether wife had any knowledge that husband's disability payment could be increased in the future, with a corresponding decrease in non-disability retirement pay. And, of course, the decree and property award had been drafted by husband's lawyer at a time that wife was unrepresented by an attorney. *See Weaver*, 124 at 329, 604 P.2d at 260 (ambiguity to be strictly construed against drafting party).

¶ 17 The trial court should also be aware that the lack of a specified sum in the decree does not necessarily require the conclusion that wife did not reasonably expect to receive a sum certain. As illustration, in *McHugh v. McHugh*, 124 Idaho 543, 861 P.2d 113 (App. 1993), the parties had agreed that the wife would receive a fixed dollar amount based on the husband's then disposable retirement pay, which was "$360.59 plus cost-of-living increases." 861 P.2d at 114. But in order to satisfy Navy requirements for direct payments to the wife, the agreed upon sum was subsequently converted into a percentage of the disposable retirement pay. *Id.* When the husband's disposable retirement pay was later reduced due to an increase in his disability benefits, the court increased the wife's percentage of the remaining disposable retirement pay in order to allow the wife to continue to receive approximately the same monthly payments she had received prior to the change in the husband's disability status. *Id.* at 114–15.

¶ 18 The husband protested the increase, arguing that by ultimately agreeing to receive a percentage of his disposable retirement pay the wife had given up her right to receive a sum certain. *Id.* at 115. The Idaho Court of Appeals, however, held otherwise, finding that "substantial evidence in the record" supported the conclusion that "translating the fixed-sum formula to a percentage figure was intended to give effect to the terms of the settlement agreement," which called for the wife to receive the $360.59 plus cost-of-living increases. *Id.*

¶ 19 Likewise, here, the fact that the parties couched their agreement in terms of a percentage of husband's 1992 disposable retirement pay does not inevitably mean that

wife did not expect to receive a sum certain. It may be that at the time of the decree both parties knew the amount of husband's disposable retirement pay and merely intended that a sum equal to one half of that amount would be paid to wife. Thus, the right of wife to receive what she had expected would not be compromised merely because that sum was expressed as a percentage of the available community asset rather than an actual dollar figure.

¶ 20 Nor would wife's entitlement to an agreed-upon sum fail, as husband argues, simply because he may no longer have any disposable monthly retirement pay. Here, the reasoning of *Hisgen v. Hisgen*, 554 N.W.2d 494 (S.D.1996), is persuasive.

¶ 21 In *Hisgen*, the wife was awarded one half of the husband's retirement pay, which at the time of the dissolution resulted in payments of $394.50 per month. 554 N.W.2d at 495. After the decree was entered, the Veterans' Administration granted the husband disability benefits. *Id.* To receive them, he waived an equal amount of his military retirement pay; and the wife's monthly payments consequently dropped to $50.00 per month. *Id.* The wife then sought relief and the trial court found that the parties' stipulation entitled her to an amount equal to one half of the husband's retirement annuity before any reduction for disability payments. *Id.* at 496.

¶ 22 In upholding the trial court's decision, the South Dakota Supreme Court held that, while a property division was "irrevocably fixed by the terms of the divorce decree and cannot be later modified, if indeterminate language was employed, a court may clarify its decree and the arrangement it was based upon." *Id.* at 497. The court found it "meaningful" that the parties had known at the time they negotiated the settlement that the husband was applying for disability benefits. *Id.* at 498. It concluded that their agreement that the wife receive an amount equal to one half of the husband's military retirement benefit, made in light of that knowledge, meant that the parties intended that the wife receive an amount equal to that sum "even if the character of [the husband's] entitlement changed through receipt of disability payments." *Id.* The court further noted that nothing in *Mansell* precluded a

court "from interpreting divorce settlements to allow a spouse to receive property or money equivalent to one half a veteran's retirement entitlement" and that the husband was free to "satisfy his obligations to his former wife by using other available assets." *Id.*

¶ 23 Similarly, here, nothing precludes the trial court from finding that the parties' intent was to allow wife to receive the amount equal to one half of $1596.00, and from clarifying its decree accordingly. In such event, husband would not necessarily be required to use his exempt disability pay to satisfy his obligation to wife, but could satisfy it from any other available asset. Of course, upon remand, the outcome of this issue will be in the hands of the trial court as the finder of fact.

## CONCLUSION

¶ 24 For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

CONCURRING: NOEL FIDEL, Presiding Judge, and E.G. NOYES, JR., Judge.