284 P.3d 880

### In re the Marriage of Diane MERRILL, Petitioner/Appellant,

v.

### Robert Kenneth MERRILL, Respondent/Appellee.

### No. 1 CA–CV 11–0103.

Court of Appeals of Arizona, Division 1, Department E.

Aug. 9, 2012.

---

Popp Law Firm PLC By James S. Osborn Popp, Tempe, Attorneys for Petitioner/Appellant.

Law Offices of John R. Zarzynski By Georgia A. Wilder, Phoenix, Attorneys for Respondent/Appellee.

## OPINION

JOHNSEN, Judge.

¶ 1 In this case we revisit the post-decree right of a former spouse to a share of the other spouse's military retirement benefits when the retiree has waived retirement pay in favor of a tax benefit afforded to him as a disabled veteran. We hold the military retiree must make his former spouse whole to the extent his unilateral decision to receive the tax benefit has reduced her share of his retirement benefits.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Diane and Robert Merrill ("Wife" and "Husband," respectively) married in 1963. Husband is a West Point graduate who was injured during a mortar attack in Vietnam. He retired in 1983, then went to work as a test pilot for a defense contractor. When the couple divorced 10 years later, Husband had a disability rating of 18.62 percent from the Veterans Administration.

¶ 3 The dissolution decree acknowledged Husband's ongoing receipt of monthly military disability payments but did not treat those payments as community property subject to division. The decree, however, equally divided Husband's military retirement benefits by providing for a qualified domestic relations order awarding 50 percent of his "military retirement pay" to Wife as her sole and separate property.

¶ 4 At the time of the 1993 dissolution, Husband was 52 years old and Wife, 50. In 2004, the Veterans Administration approved Husband's application for a 100 percent disability rating and found him eligible to receive Combat–Related Special Compensation benefits. This program, referred to as CRSC, allows veterans injured in combat to choose to receive tax-free benefits in exchange for a dollar-for-dollar reduction in their retirement pay. *See* 10 U.S.C. § 1413a (2006 & Supp. 2008); *see also* 26 U.S.C. § 104(a)(4), (b)(2)(C) (2002); Mark E. Sullivan & Charles R. Raphun, *Dividing Military Retired Pay: Disability Payments and the Puzzle of the Parachute Pension*, 24 J. Am. Acad. Matrim. Law 147, 162 (2001). The result of Husband's decision to elect to receive CRSC was that Wife's share of his retirement pay was all but eliminated.

¶ 5 In 2010, arguing Husband improperly had reduced her sole-and-separate share of his military retirement benefits by waiving those benefits in favor of CRSC, Wife filed a petition seeking $63,796 plus interest in arrearages and a "modified retirement award." At trial, the superior court heard evidence that Husband was entitled to receive gross military retirement pay of $3,262 a month, but that he had waived all but about $400 of that to receive monthly tax-free CRSC benefits of $2,823. Accounting for various disbursements, the result of Husband's waiver was that Wife's share of his monthly retirement was reduced to $133 from $1,116.

¶ 6 The superior court denied Wife's petition. We have jurisdiction of Wife's appeal pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Stat-

utes ("A.R.S.") section 12–2101(A)(2) (West 2012).[1]

## DISCUSSION

### A. General Principles.

¶ 7 The facts are undisputed. We review *de novo* questions of law, including interpretation of statutes and dissolution decrees. *Danielson v. Evans*, 201 Ariz. 401, 406, ¶ 13, 36 P.3d 749, 754 (App.2001). Under Arizona law, when community property is divided at dissolution, "each spouse receives an immediate, present, and vested separate property interest in the property awarded to him or her by the trial court." *Koelsch v. Koelsch*, 148 Ariz. 176, 181, 713 P.2d 1234, 1239 (1986). After entry of the decree, a spouse may not exercise control over separate property awarded to the other. *Id.*

¶ 8 Retirement benefits "are generally viewed as a form of deferred compensation for services rendered by employees." *Johnson v. Johnson*, 131 Ariz. 38, 41, 638 P.2d 705, 708 (1981). Accordingly, such benefits constitute community property to the extent they are earned during a marriage. *Id.* Consistent with that principle, federal law permits states to treat the "disposable retired pay" of a retired military member as community property in dissolution proceedings. *See* 10 U.S.C. § 1408(c) (2006); *see also In re Marriage of Gaddis*, 191 Ariz. 467, 468, 957 P.2d 1010, 1011 (App.1997). The rule is different, however, for disability payments the Veterans Administration pays to a military member. "[D]isability pay is an entitlement that is generated when the recipient becomes disabled during the recipient's employment and, to the extent of his disability, cannot work." *Perez v. Perez*, 107 Hawai'i 85, 110 P.3d 409, 413 (App.2005). Federal law precludes division of those benefits as community property. *See* 10 U.S.C. § 1408(a)(4)(C); *Mansell v. Mansell*, 490 U.S. 581, 594–95, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989).

¶ 9 As this case demonstrates, federal law allows some disabled military retirees to choose to receive benefits only to the extent they waive retirement pay. The evidence here established, for example, that Husband could receive the $2,823 to which he was entitled in monthly CRSC payments only by forgoing a like amount in retirement pay. And because retirement benefits are taxed but CRCS payments are not, given the choice, military retirees commonly opt to receive CRSC payments over retirement. *See Mansell*, 490 U.S. at 583–84, 109 S.Ct. 2023 (military retirees who elect to receive tax-free disability benefits may increase after-tax income by waiving retirement). An unfortunate consequence of the government's decision to condition the CRSC tax benefit on waiver of retirement pay is that in community-property states such as Arizona, former spouses of retirees who elect CRSC see their sole-and-separate shares of military retirement benefits decline or disappear altogether.

¶ 10 We have held, however, that "Arizona law does not permit" a former spouse's interest in military retirement pay to be reduced in such a manner. *Gaddis*, 191 Ariz. at 469, 957 P.2d at 1012. At issue in *Gaddis* was a retiree's waiver of military retirement benefits in favor of receipt of civil service pay. The court held the military retiree's unilateral decision to "frustrate[ ] the decree" by waiving retirement payments was impermissible and upheld the superior court's order requiring the retiree to make his former spouse whole by paying arrearages and a monthly sum equal to the amount by which his waiver had reduced her share of his retirement pay. *Id.* at 468, 470–71, 957 P.2d at 1011, 1013–14.

¶ 11 Likewise, in *Danielson v. Evans*, 201 Ariz. at 407–08, ¶¶ 19–24, 36 P.3d at 755–56, we affirmed a superior court order requiring a disabled retiree to make "payments-in-kind" to his former spouse to reimburse her the amount by which his waiver of retirement in favor of disability reduced her monthly share of the retirement benefits awarded to her in their dissolution. Citing *Gaddis*, we rejected the military retiree's argument that

---

1. Absent material revision after the date of the events at issue, we cite a statute's current version.

the decree entitled his former wife only to a share of whatever retirement pay remained after his waiver. *Id.* at 408, ¶¶ 23–24, 36 P.3d at 756; *see also Harris v. Harris*, 195 Ariz. 559, 562, ¶ 13, 991 P.2d 262, 265 (App. 1999) (federal law did not bar former spouse from seeking reimbursement from military retiree who waived retirement benefits to receive disability pay); *In re Marriage of Crawford*, 180 Ariz. 324, 327, 884 P.2d 210, 213 (App.1994) ("An employee spouse cannot defeat the nonemployee spouse's interest in retirement benefits by invoking a condition wholly within his or her control."); *McNeel v. McNeel*, 169 Ariz. 213, 215, 818 P.2d 198, 200 (App.1991) (former husband was not permitted "to transform retirement benefits constituting community property to disability benefits constituting separate property").[2]

## B. Husband Must Indemnify Wife Against Loss She Has Suffered Because of His Decision to Waive His Retirement Benefits.

■ ¶ 12 The decree in this case provided that Husband and Wife each would receive "as their sole and separate property one-half of [Husband's] military retirement pay"; the qualified domestic relations order granted each of them 50 percent of Husband's "retired pay." Husband argues the cases cited above do not apply because the decree did not expressly grant Wife a share in any retirement benefit he might waive in favor of CRSC payments.

■ ¶ 13 We cannot accept Husband's contention that a former spouse's interest in military retirement benefits may be undermined by the retiree's unilateral waiver so long as the decree does not specifically forbid it. We hold that, to the contrary, a former spouse who has been awarded an interest in the other's "military retirement pay" or "military retirement" may be entitled to relief even though the decree contains no express reference to a disability waiver. *See Gaddis*, 191 Ariz. at 470, 957 P.2d at 1013 (division of "military retirement benefits" not subject to reduction by retiree's decision to waive retirement pay for civil service compensation).

■ ¶ 14 Husband argues the decree was drafted by Wife's counsel and contends that

**2.** A clear majority of the jurisdictions that have addressed the issue likewise allow relief to a former spouse whose share of military retirement benefits is reduced by the other spouse's post-decree waiver of retirement in favor of disability payments. *Surratt v. Surratt*, 85 Ark. App. 267, 148 S.W.3d 761, 767 (2004) (majority of states allow relief "on one theory or another"); *see also, e.g., Stone v. Stone*, 26 So.3d 1232, 1239 (Ala.Civ.App.2009) ("to allow one party, after judgment, to unilaterally reduce the other party's award of retirement benefits would be inequitable"); *In re Marriage of Smith*, 148 Cal.App.4th 1115, 56 Cal.Rptr.3d 341, 343–47 (2007) (retiree ordered to indemnify former spouse for election of disability benefits in lieu of retirement pay); *In re Marriage of Lodeski*, 107 P.3d 1097, 1101 (Colo.App.2004) (majority view is that court may use "equitable theories" to prevent retiree from unilaterally defeating former spouse's share of benefits); *Janovic v. Janovic*, 814 So.2d 1096, 1100–01 (Fla.Dist.Ct.App.2002) (post-decree order requiring retiree to indemnify former spouse for loss caused by disability waiver "is enforcement [of the decree] rather than modification"); *Perez*, 110 P.3d at 416; *In re Marriage of Neilsen*, 341 Ill.App.3d 863, 275 Ill.Dec. 369, 792 N.E.2d 844, 849 (App.2003) (waiver of retirement benefits was impermissible attempt to modify decree); *Bandini v. Bandini*, 935 N.E.2d 253, 264 (Ind. App.2010) ("[A] military spouse may not, by a post-decree waiver of retirement pay in favor of disability benefits or CRSC, unilaterally and vol-

untarily reduce the benefits awarded the former spouse in a dissolution decree."); *Black v. Black*, 842 A.2d 1280, 1286 (Me.2004) (retiree's waiver of retirement pay "usurped the allocation of property ordered in the judgment, and it promoted the exact instability that the policy favoring the finality of judgments seeks to avoid"); *Krapf v. Krapf*, 439 Mass. 97, 786 N.E.2d 318, 324 (2003) (military retiree's waiver of retirement breached duty of good faith and fair dealing implied in his property settlement agreement with former spouse); *Megee v. Carmine*, 290 Mich.App. 551, 802 N.W.2d 669, 682 (2010); *Hillyer v. Hillyer*, 59 S.W.3d 118, 122–23 (Tenn. App.2001). *But see, e.g., In re Marriage of Pierce*, 26 Kan.App.2d 236, 982 P.2d 995, 999–1000 (1999) (court powerless to grant relief to spouse whose share of military retirement benefits is eliminated by former spouse's waiver); *Morgan v. Morgan*, 249 S.W.3d 226, 233 (Mo.App.2008) (because neither the settlement agreement nor decree expressly provided for indemnification, waiver of retirement benefits "was merely a contingency for which [former spouse] was unprotected"); *Sharp v. Sharp*, 314 S.W.3d 22, 25 (Tex.App.2009) (decree dividing military retirement only entitled former spouse to share retiree's retirement pay "if, as, and when [the retiree] received it"); *Youngbluth v. Youngbluth*, 188 Vt. 53, 6 A.3d 677, 690 (2010) ("[T]rial courts cannot use enforcement proceedings to add indemnity provisions that were not in the original property division order.").

as a result, she must bear the consequence of its omission of express protection against the risk that he might waive retirement pay in favor of a disability benefit. But the decree is a judgment of the court, which we interpret as a matter of law without parol evidence. *In re Marriage of Zale,* 193 Ariz. 246, 248–50, ¶¶ 9–15, 972 P.2d 230, 232–34 (1999).[3]

¶ 15 The qualified domestic relations order granted Wife "fifty percent (50%) of the amount paid to [Husband] as retired pay effective January 31, 1993." On its face, the language of the decree is unconditional; it does not allow Husband to reduce Wife's award by unilaterally deciding to waive his military retirement benefits so that he can receive an additional benefit for himself.[4]

¶ 16 In construing the decree, we are guided further by decisions holding that the term "military retirement pay" in a dissolution decree means the amount of retirement pay the former military member is entitled to receive without regard to any waiver that might be required to obtain disability benefits. In *Bandini v. Bandini,* 935 N.E.2d 253, 260 (Ind.App.2010), for example, the court held the term "military retirement/pension plan" in a settlement agreement and decree "encompasses Husband's gross retirement pay, before any deductions for [insurance] costs or amounts waived to receive VA disability benefits." And in *Johnson v. Johnson,* 37 S.W.3d 892 (Tenn.2001), the court held a property settlement agreement's reference to "all military retirement benefits" due the husband "has a usual, natural, and ordinary meaning," which "comprehensively references all amounts to which the retiree would ordinarily be entitled as a result of retirement from the military." *Id.* at 896;

accord *In re Marriage of Warkocz,* 141 P.3d 926, 930 (Colo.App.2006) (non-military former spouse entitled to relief when settlement agreement apportioned "military retirement"); *In re Marriage of Neilsen,* 341 Ill. App.3d 863, 275 Ill.Dec. 369, 792 N.E.2d 844, 849 (2003) (decree divided "gross retired or retainer pay").

¶ 17 We likewise reject Husband's related argument that absent an express indemnity provision in the decree, a retiree who unilaterally elects to receive benefits in a way that impairs his former spouse's sole-and-separate interest in those benefits cannot be required to make his former spouse whole. As we have said, under Arizona law, a former spouse may not unilaterally defeat an interest that a decree of dissolution has granted to the other. *Koelsch,* 148 Ariz. at 181, 713 P.2d at 1239. Given that Husband's unilateral decision to elect a more favorable tax treatment for his receipt of government benefits decimated Wife's sole-and-separate interest in the retirement benefits he waived, equity requires that he must hold her harmless from the consequences of his action. The same result would follow if Husband had unilaterally impaired Wife's interest in any other property awarded to her by the decree; the absence of an express indemnity in the decree is irrelevant to her right to relief in such a circumstance.

¶ 18 Husband incorrectly asserts that Wife's petition seeks to hold him responsible for the increase in his disability rating that occurred after the dissolution. Wife's share of Husband's military retirement benefits did not decline because his disability rating rose years after the dissolution. What all but eliminated her monthly share of Husband's retirement benefits was his election to waive

---

3. In *Harris,* we acknowledged the rule that a former spouse may not unilaterally reduce the other's sole-and-separate interest in retirement benefits awarded by a decree, but we directed the superior court on remand to consider the parties' intent with respect to the language of their property settlement agreement, which the superior court had adopted in the decree. 195 Ariz. at 562–63, ¶¶ 13–17, 991 P.2d at 265–66. *Harris* did not mention our supreme court's then-recent decision in *Zale,* which makes clear that parol evidence of litigants' intent has no place in the interpretation of a judgment. *Zale,* 193 Ariz.

at 250, ¶ 15, 972 P.2d at 234; see also *Danielson,* 201 Ariz. at 406–07, ¶¶ 16–17, 36 P.3d at 754–55.

4. In the section of the decree addressing spousal maintenance, the decree stated, "[Wife's] only income is her share of [Husband's] military retirement of SIX HUNDRED NINETY–EIGHT AND 17/100 DOLLARS ($698.17) per month." Thus, the court did not acknowledge the possibility that Wife's share of Husband's retirement was subject to reduction by his action or otherwise. *See Danielson,* 201 Ariz. at 406, ¶ 15, 36 P.3d at 754.

his retirement pay so that he could receive a like amount in CRSC payments, tax-free.

¶ 19 Husband similarly argues that Wife's petition in effect demanded that he reject "a special, tax free benefit for combat injured Veterans which is not divisible with a former spouse." Not so. A veteran such as Husband who elects CRSC does not receive more in the way of gross monthly benefits. The only difference is that the portion of his overall benefits denominated as CRSC comes to him tax-free. Applying the cases cited above, we do not hold that Husband must reject the opportunity to receive the tax benefits afforded by CRSC; we only hold that he must indemnify Wife for the consequences of doing so.

¶ 20 Husband also argues that *Danielson, Harris* and *Gaddis* do not apply here because unlike the former military spouses in those cases, he has a 100 percent disability rating, meaning he cannot work. But we addressed this issue in *Danielson,* concluding there that claimed inequities created by post-dissolution contingencies do not allow a former spouse to disturb an allocation made in the decree. 201 Ariz. at 410, ¶ 31, 36 P.3d at 758.

### C. Arizona Revised Statutes § 25–318.01 Does Not Apply.

¶ 21 In its order dismissing Wife's petition, the superior court accepted Husband's contention that A.R.S. § 25–318.01 (West 2012) forbids the relief Wife sought. The statute provides:

In making a disposition of property pursuant to § 25–318 or 25–327, a court shall not do any of the following:

1. Consider any federal disability benefits awarded to a veteran for service-connected disabilities pursuant to 38 United States Code chapter 11.

2. Indemnify the veteran's spouse or former spouse for any prejudgment or postjudgment waiver or reduction in military retirement or retainer pay related to receipt of the disability benefits.

3. Award any other income or property of the veteran to the veteran's spouse or former spouse for any prejudgment or postjudgment waiver or reduction in military retirement or retainer pay related to receipt of the disability benefits.

¶ 22 Husband argues the superior court correctly held that § 25–318.01 bars Wife's request for relief from any damage his election to receive CRSC benefits caused her. We conclude, however, that the statute does not apply in this instance.

¶ 23 In describing the proceedings to which it applies, § 25–318.01 begins by providing that a court may not enter certain orders "[i]n making a disposition of property pursuant to § 25–318 or 25–327." A.R.S. § 25–318.01. Wife argues § 25–318.01 has no application here because a court "mak[es] a disposition" of marital property only when it enters a decree of dissolution, which in this case occurred years before she filed her petition for relief.

¶ 24 The statute might be read to support Wife's argument. For example, A.R.S. § 25–318 (West 2012), referenced in the first sentence of the statute, establishes the legal requirements by which a court will divide community property "[i]n a proceeding for dissolution of the marriage, or for legal separation." On the other hand, the same introductory sentence in § 25–318.01 also refers to A.R.S. § 25–327 (West 2012), which governs a court's power, *inter alia,* to modify a dissolution decree's distribution of community property. Moreover, subparts 2 and 3 of § 25–318.01 specifically apply upon a retiree's "postjudgment waiver or reduction in military retirement." Those references tend to undercut the inference from the first sentence of the statute that it applies only to entry of an original decree of dissolution and not to proceedings ("postjudgment" proceedings) that may occur later.

¶ 25 Nevertheless, assuming for purposes of argument that § 25–318.01 may be implicated in a post-decree proceeding, the statute has no effect here because it expressly applies only to disability benefits awarded pursuant to Title 38 of the United States Code. The benefits Husband elected to receive under CRSC are paid to him pursuant to Title 10, not Title 38. Title 38 of the United States Code is titled "Veterans' Benefits"; chapter 11 of Title 38 authorizes disability

compensation for military members. *See* 38 U.S.C. §§ 1110, 1131 (2006). CRSC, the tax-free benefit available to combat-disabled veterans that Husband elected to receive, is found not in Title 38 of the United States Code but in Title 10, titled "Armed Forces," in chapter 71, titled "Computation of Retired Pay."

¶ 26 In *In re Marriage of Priessman*, 228 Ariz. 336, 266 P.3d 362 (App.2011), we addressed this issue in the context of A.R.S. § 25–530 (West 2012), which governs spousal-maintenance proceedings and, like § 25–318.01, bars the court from considering "any federal disability benefits awarded to the other spouse for service-connected disabilities pursuant to 38 United States Code chapter 11." The military retiree in *Priessman*, like Husband, elected to waive retirement benefits in favor of CRSC payments. 228 Ariz. at 338, ¶ 6, n. 3, 266 P.3d at 364. We pointed out that the CRSC program found in Title 10 "has its own requirements separate from those contained in title 38." *Id.* at 339, ¶ 10, 266 P.3d at 365; *see also* 10 U.S.C. § 1413a(e) (defining "combat-related disability" for benefits purposes).

■■■ ¶ 27 When the meaning of a statute is clear from its words, we usually look no further to interpret it. Here, the legislature expressly has barred a court in a dissolution action from "[c]onsider[ing] any federal disability benefits awarded to a veteran for service-connected disabilities pursuant to 38 United States Code chapter 11." A.R.S. § 25–318.01(1). We must conclude that while § 25–318.01 prohibits a court making a property disposition from considering military disability benefits paid pursuant to Title 38 of the United States Code, it has no application to benefits paid pursuant to Title 10. *See Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.*, 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994) ("[A]bsent a clear indication of legislative intent to the contrary, we are re-

luctant to construe the words of a statute to mean something other than what they plainly state."). Accordingly, the statute does not bar Wife's petition for relief from the damage she argues she suffered to her sole-and-separate property interest in Husband's military retirement pay. *See Priessman*, 228 Ariz. at 339, ¶ 10, 266 P.3d at 365.[5]

### D. Remedy.

■■■ ¶ 28 Husband argues he cannot be compelled to use his disability or CRCS benefits to reimburse Wife because federal law precludes a non-military spouse from acquiring any interest in a veteran's disability payments. *See* 38 U.S.C. § 5301(a)(1) (2006) (Veterans Administration benefits "shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary"); *cf. Mansell*, 490 U.S. at 587 n. 6, 109 S.Ct. 2023 (noting court was not deciding "whether the anti-attachment clause ... independently protects" disability benefits).

¶ 29 Wife does not contend that in a case such as this, a state court may require a military retiree to satisfy his indemnity obligation using disability benefits. And, like other courts, we have not ordered a former military member to use disability funds to indemnify his former spouse. Instead, we have held that the retiree is free to indemnify Wife using "any other available asset." *Harris*, 195 Ariz. at 564, ¶ 23, 991 P.2d at 267. As a Michigan court explained,

> [W]e are not ruling that a state court has the authority to divide a military spouse's CRSC, nor that the military spouse can be ordered by a court to pay the former spouse using CRSC funds. Rather, the compensation to be paid the former spouse as his or her share of the property division in lieu of the waived retirement pay can

---

5. Our decision to refrain from broadly construing the language of § 25–318.01 is consistent with the principle that we will avoid a construction of a statute that might raise constitutional concerns. *See State v. Gomez*, 212 Ariz. 55, 60, ¶ 28, 127 P.3d 873, 878 (2006) ("We also construe statutes, when possible, to avoid constitutional difficulties."); *Blake v. Schwartz*, 202 Ariz.

120, 126, ¶ 27, 42 P.3d 6, 12 (App.2002) (court has "duty to construe a statute so as to render it constitutional if reasonably possible"). As Wife argues, construing § 25–318.01 to bar her claim for relief for injury to her property interest in Husband's retirement benefits caused by his post-decree election of CRCS would raise serious due-process concerns.

come from any source the military spouse chooses....

*Megee v. Carmine,* 290 Mich.App. 551, 802 N.W.2d 669, 671 (2010); *see also In re Marriage of Lodeski,* 107 P.3d 1097, 1100 (Colo. App.2004) (retiree obligated to pay former spouse's share of his retirement "from any available assets"); *Black v. Black,* 842 A.2d 1280, 1285 (Me.2004) (order that requires retiree to pay former spouse "some or all of the amount she would have received directly from the United States Government absent [his] conversion of his retirement pay to disability pay does not contravene" federal law); *Scheidel v. Scheidel,* 129 N.M. 223, 4 P.3d 670, 674 (App.2000) (military retiree "may be required to shuffle assets or rearrange his finances" in order to satisfy indemnification obligation); *Hayes v. Hayes,* 164 P.3d 1128, 1132 (Okla.Civ.App.2007) (retiree may satisfy decree's obligation "from whatever source of funds he chooses"); *Hisgen v. Hisgen,* 554 N.W.2d 494, 498 (S.D.1996); *Hillyer v. Hillyer,* 59 S.W.3d 118, 123–24 (Tenn.App.2001) (court may not require federal government to pay military retiree's disability benefits directly to non-military spouse); *Holmes v. Holmes,* 7 Va.App. 472, 375 S.E.2d 387, 395 (1988).

¶ 30 Accordingly, on remand, the superior court must determine whether Husband can satisfy his obligation to indemnify Wife from any eligible income or assets and enter an appropriate order consistent with this opinion. *See Perez,* 110 P.3d at 416 (order that "[did] not directly assign" retiree's disability pay was enforceable; on remand, trial court was to determine whether retiree could "satisfy his obligation with assets other than his disability benefits").[6]

### E. Attorney's Fees.

¶ 31 The superior court denied Wife's request for attorney's fees pursuant to A.R.S. § 25–324 (West 2012) based on its findings that neither party had taken an unreasonable position and both had "similar financial resources." We infer the court came to that conclusion only by imputing to Wife a nurs-ing salary even though she testified that, at 67 and one-half years old, she was unemployed because she could no longer meet the demands of her job. Absent her nursing salary, Wife's monthly income was $1,502, far less than Husband's income of $7,477, much of it received tax-free. On remand, the court is to reconsider its finding that Wife's financial resources were similar to Husband's.

### CONCLUSION

¶ 32 For the reasons set forth above, we reverse and remand the superior court's order for further proceedings consistent with this decision. We also reverse and remand for reconsideration the court's order denying Wife's request for attorney's fees pursuant to A.R.S. § 25–324. We decline her request for attorney's fees on appeal without prejudice to a request for those fees filed in the superior court on remand. We award Wife her costs on appeal, conditioned on her compliance with Arizona Rule of Civil Appellate Procedure 21.

CONCURRING: PATRICIA A. OROZCO, Judge and LAWRENCE F. WINTHROP, Chief Judge.

---

**6.** Although the superior court did not directly address this issue, its finding that "Husband has no other income other than his disability bene-fits" is not supported by the record, which demonstrates that he receives some non-military pension benefits.