NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

ANTON FOLTIN, *Petitioner/Appellee,*

*v.*

GERLINDE FOLTIN, *Respondent/Appellant.*

No. 1 CA-CV 14-0496 FC
FILED 4-5-2016

Appeal from the Superior Court in Maricopa County
No. FN2013-092673
The Honorable John R. Hannah, Jr., Judge

**AFFIRMED**

COUNSEL

Law Office of James E. Holland, P.C., Mesa
By James E. Holland
*Counsel for Petitioner/Appellee*

Harmon Law Office, Phoenix
By Diana McCulloch
*Counsel for Respondent/Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Peter B. Swann delivered the decision of the court, in which Judge Lawrence F. Winthrop and Judge Donn Kessler joined.

_____

**S W A N N**, Judge:

**¶1**         Gerlinde Foltin ("Wife") appeals the superior court's denial of her request that it order Anton Foltin ("Husband") to continue paying the outstanding mortgage on the parties' martial residence, which Wife received as her sole and separate property in the decree dissolving their marriage.  Wife argues that the court's ruling was inconsistent with the terms of the parties' post-nuptial agreement, and challenges the court's denial of her request for attorney's fees and costs.

**¶2**         We affirm.  The court properly considered extrinsic evidence to determine the meaning of the post-nuptial agreement, and sufficient evidence supports the court's determination that the parties did not intend for Husband to remain obligated for post-dissolution mortgage payments.  The record also supports the court's denial of Wife's request for attorney's fees and costs.

## FACTS AND PROCEDURAL HISTORY

**¶3**         The parties married in 2003.  In March 2005, they purchased the martial residence, and the following month executed a post-nuptial agreement that provided, as relevant:

> WHEREAS, on March 19, 2005, the parties entered into a Purchase Agreement with Beazer Home Sales Arizona, Inc., for the purchase of lot 0333 of Morning Sun Farms Ph 2, Park, and for the construction of a residence on said lot, located at 35296 North Happy Jack Drive, Queen Creek, Arizona (hereinafter the "Happy Jack Residence");

> WHEREAS, Beazer Home Sales Arizona, Inc., subsequently advised the parties it would be in their interest to amend the Purchase Agreement to provide only ANTON is a party to said Purchase Agreement given GERLINDE is not a permanent resident of the United States;

WHEREAS, it may be necessary for the Happy Jack Residence to be initially titled solely in ANTON'S name for the purpose of obtaining financing at a reasonable rate;

WHEREAS, GERLINDE will provide seventy thousand dollars ($70,000.00) as the deposit for the purchase and construction of the Happy Jack Residence from her sole and separate funds and has expended approximately fifty thousand dollars ($50,000.00) of her sole and separate funds for community purposes;

. . . .

WHEREAS, the parties anticipate it will be necessary to obtain financing in the approximate amount of one hundred twenty thousand dollars ($120,000.00) to complete the purchase and construction of the Happy Jack Residence, and that the parties may refinance in the future;

WHEREAS, the parties contemplate a long and lasting marriage, terminated only by the death of one of the parties, they also recognize the possibility their marriage might be terminated by dissolution of marriage, legal separation or annulment;

WHEREAS, the parties wish to preserve GERLINDE's entitlement to reimbursement of her sole and separate property contributions and to preserve her sole and separate property in the event the marriage is terminated by dissolution of marriage, legal separation or annulment, and in the event ANTON were to die prematurely;

. . . .

THEREFORE, in consideration of the mutual promises and covenants set forth herein, ANTON and GERLINDE mutually covenant and agree as follows:

. . . .

2.     Payment of Mortgage.  ANTON shall be solely responsible for all mortgage payments (including necessary escrow payments for taxes and insurance) related to the Happy Jack Residence (including the original mortgage and

any subsequent mortgage) until such time as the mortgage is
paid in full and the property is owned free and clear.

¶4 Husband filed a petition for dissolution of the marriage in
2013. As part of the dissolution proceedings, the trial court held an
evidentiary hearing regarding the division of the marital residence. Wife
argued that the post-nuptial agreement required the court to award her
the residence as her sole and separate property and to order that Husband
would be solely responsible for paying the balance of the mortgage loan
secured by the property. Husband maintained that his obligation to pay
the mortgage for the martial residence did not survive dissolution of the
marriage, and he asked the court to award Wife the house and allocate the
mortgage obligation to her.

¶5 The court interpreted the post-nuptial agreement to mean
that Husband's obligation to pay the mortgage terminated upon the
division of the property at dissolution. The court awarded the residence,
including all equity, to Wife as her sole and separate property and
directed that she would be responsible for paying the mortgage loan
secured by the property. The court denied both parties' requests for
attorney's fees and costs.

¶6 Wife appeals.

**DISCUSSION**

I. SUFFICIENT EVIDENCE SUPPORTS THE SUPERIOR COURT'S
DETERMINATION THAT THE PARTIES DID NOT INTEND FOR
HUSBAND TO REMAIN OBLIGATED FOR POST-DISSOLUTION
MORTGAGE PAYMENTS.

¶7 Wife[1] first contends that the superior court erroneously
interpreted the post-nuptial agreement in a manner contrary to the
parties' intent.

---

[1] We reject Husband's argument that Wife lacks standing to
pursue this appeal because she filed a petition for bankruptcy after the
appeal was docketed. Wife listed the martial residence in her bankruptcy
schedule and disclosed her appeal of the decree to the bankruptcy trustee.
The trustee did not administer the marital residence and the bankruptcy
court closed Wife's bankruptcy action, thereby abandoning the property
to Wife. *See* 11 U.S.C. § 554(c) (2010) ("Unless the court orders otherwise,

**¶8**        The superior court's interpretation of a contract or agreement is a question of law we review de novo. *In re Marriage of Pownall,* 197 Ariz. 577, 580, ¶ 7 (App. 2000).  But we accept the court's factual findings as to the intent of the parties in entering an agreement unless they are clearly erroneous. *McNeil v. Hoskyns,* 236 Ariz. 173, 176, ¶ 13 (App. 2014); *Chopin v. Chopin,* 224 Ariz. 425, 428, ¶ 7 (App. 2010).  We "defer to the court's determination of witnesses' credibility and the weight to give conflicting evidence." *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998).

**¶9**        Agreements between spouses, like other contracts, "are to be read in light of the parties' intentions as reflected by their [contract] language and in view of all circumstances; if the intention of the parties is clear from such a reading, there is no ambiguity."  *Harris v. Harris*, 195 Ariz. 559, 562, ¶ 15 (App. 1999); *see also Beaugureau v. Beaugureau,* 11 Ariz. App. 234, 237 (1970).  If the contract language is reasonably susceptible to more than one meaning, extrinsic evidence may be admitted to interpret the contract.  *Taylor v. State Farm Mut. Auto. Ins. Co.,* 175 Ariz. 148, 154–55 (1993).  We will not construe a contract term in a way that renders another contract term meaningless -- "each part of a contract must be read together, 'to bring harmony, if possible, between all parts of the writing.'" *ELM Retirement Ctr., LP v. Callaway*, 226 Ariz. 287, 291, ¶ 18 (App. 2010) (citation omitted).

**¶10**        The post-nuptial agreement at issue here states that Husband shall be solely responsible for all mortgage payments for the marital residence until the mortgage is paid in full.  But the agreement does not expressly address whether this obligation continues after dissolution.  Further, the agreement contains provisions that are contrary to its directive that Husband is solely responsible for the mortgage post-dissolution until it is paid in full.  For example, the agreement provides that if the parties' marriage had been terminated by dissolution after Husband had paid 50% of the principal balance of the mortgage, he would have held equity in the property and would have been entitled to compel its sale, which would have presumably ended the mortgage obligation.

**¶11**        Because the agreement is reasonably susceptible to more than one interpretation, the superior court properly considered the

---

any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.").

extrinsic evidence offered by both parties regarding their intentions and the meaning of the agreement. Wife testified that Husband agreed to pay the entire mortgage for the property as a means of repaying Wife for the down payment and for monies she lent to him for payment of his separate debts. Husband denied that Wife lent him any money, and he argued that because the house would go to Wife as her separate property, she should be responsible for the remaining mortgage amount.

¶12　　　　The court found that the parties intended to allow Wife to recover some of the separate property she invested in the martial community, but rejected Wife's argument that the agreement entitled her to keep the martial residence while Husband continued to pay the mortgage for the property. We defer to these findings because they are supported by the evidence and not clearly erroneous. Moreover, as the superior court noted, Wife's interpretation would render superfluous other contract provisions concerning Husband's acquisition of an equity interest and ability to require a sale of the residence.

II.　　THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION BY DENYING WIFE'S REQUEST FOR ATTORNEY'S FEES AND COSTS.

¶13　　　　Wife next contends that the superior court erred by denying her request for attorney's fees and costs under A.R.S. § 25-324(A). We review the ruling for an abuse of discretion. *Mangan v. Mangan,* 227 Ariz. 346, 352, ¶ 26 (App. 2011).

¶14　　　　A.R.S. § 25-324(A) provides that the court may award attorney's fees and costs "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." Here, the court found that there was not a substantial disparity of financial resources between the parties and that neither party acted more unreasonably than the other in the litigation.

¶15　　　　Wife contends that the court's finding of no substantial financial disparity is contrary to its finding that Husband earns $1,130 per month more than Wife and to its decision to award Wife spousal maintenance. But after taking spousal maintenance payments into consideration, Husband earns only $130 more per month than Wife. Income disparity does not mandate an award under § 25-324(A) -- the court has discretion to determine whether an award is warranted. *See Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 9 (App. 2014). The superior court acted well within its discretion by declining to award fees and costs based on the minor discrepancy between Husband and Wife's incomes.

**CONCLUSION**

**¶16** For the foregoing reasons, we affirm. In the exercise of our discretion, we deny both parties' requests for attorney's fees on appeal. We award costs to Husband upon compliance with ARCAP 21.



Ruth A. Willingham · Clerk of the Court

FILED: ama