Filed 11/2/16

CERTIFIED FOR PARTIAL PUBLICATION[*]


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


In re the Marriage of JANICE R. and
ROBERT J. CASSINELLI.

JANICE R. CASSINELLI,

     Respondent,

     v.

ROBERT J. CASSINELLI,

     Appellant.

E063769

(Super.Ct.No. D54420)

OPINION


APPEAL from the Superior Court of Riverside County. Christopher B. Harmon, Judge. Reversed and remanded with directions.

Law Offices of Ellen C. Dove and Ellen C. Dove for Appellant.

Julie M. Clark for Respondent.

---

[*]     Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II and IX.

1

In 1964, appellant Robert J. Cassinelli and respondent Janice R. Cassinelli were married; in 1986, they were divorced. In the meantime, after 20 years of service, Robert had retired from the United States Air Force. In a stipulated judgment, the trial court awarded Janice her community property interest in Robert's military retired pay.

Fast forward 26 years. In 2012, it was determined that Robert had a combat-related disability. As a result, he became eligible to receive both veteran's disability benefits and combat-related special compensation (CRSC); to do so, however, he had to waive his retired pay. Before the waiver, Robert received $791 a month and Janice received $541 in retired pay (taxable). After the waiver, Robert received $1,743 a month in veteran's disability benefits and $1,389 a month in CRSC, for a total of $3,132 (tax-free); Janice received zero. As a result, the trial court ordered Robert to start paying Janice $541 a month in permanent and nonmodifiable spousal support.

Robert appeals, contending:

1. Under overriding federal law, the trial court lacked jurisdiction to make any award to Janice based on Robert's receipt of either veteran's disability benefits or CRSC.

2. There was insufficient evidence that the parties intended to protect Janice against the consequences of a waiver of Robert's retired pay.

3. The trial court erred by using spousal support as a remedy for the loss of a community property interest.

4. Because the judgment dividing the community property was long-since final, the trial court could not give Janice any remedy for the loss of her community property interest in the retired pay.

5. The trial court erred by making its award of spousal support permanent and nonmodifiable.

6. Robert's income was exempt and Janice could not seize it to satisfy her claim.

7. Based on the relevant factors (see Fam. Code, § 4320), Janice was not entitled to spousal support, and the trial court abused its discretion by finding otherwise.

We agree that the trial court erred by using spousal support as a remedy for the loss of a community property interest. However, it could properly order Robert to reimburse Janice for her lost community property interest; doing so would not violate either federal law or finality principles. Accordingly, we will reverse and remand with directions to enter an order awarding Janice the same amount on a different theory.

I

FACTUAL AND PROCEDURAL BACKGROUND

Janice and Robert were married in 1964. At that time, Robert was on active duty as a member of the United States Air Force. After 20 years of service, he retired from the military with the rank of Technical Sergeant.

In 1985, after 21 years of marriage, the parties separated. Janice then filed this marital dissolution proceeding.

3

In August 1986, pursuant to stipulation, the trial court entered a final judgment. It provided: "The Court finds that [Janice] has a 43.1% interest in [Robert]'s United States Air Force Pension, and that she shall receive the sum of Two Hundred Thirty ($230.00) Dollars per month, or 43.1% of said pension, whichever sum is greater. Said payments to commence on May 1, 1986, providing that [Robert] shall make said payments to [Janice] until such time as the United States Air Force is able to process [Janice]'s claims so that her share of the military pension can be paid directly to her." The judgment reserved jurisdiction over the issue of spousal support.

Thereafter, Robert held several jobs, primarily as a teacher. He developed ischemic heart disease; in 2011, he had a quadruple bypass. In 2012, he took a medical retirement from teaching. His ischemic heart disease was presumed to be due to his exposure to Agent Orange in Viet Nam. (See 38 C.F.R. § 3.309.) Thus, also in 2012, the Department of Veterans Affairs (VA) determined that he had a service-connected disability, making him eligible for disability benefits. It was further determined that his disability was combat-related, making him eligible for CRSC.

In 2013, Robert elected to receive CRSC. Before his election, he was receiving $791 a month of his retired pay and Janice was receiving $541 a month of his retired pay. After his election, he received $1,743 a month in veteran's disability benefits and $1,389 a month in CRSC, for a total of $3,132 a month. These benefits were nontaxable. Janice received zero. However, when Robert made his election, he was not aware that it would affect Janice.

At the time of trial, Robert was 72 years old.  His monthly income consisted of:

| | |
|---|---|
| Veteran's disability benefits | $1,743 |
| CRSC | $1,389 |
| State teacher's disability benefits | $1,433 |
| Social security benefits | $1,105 |
| Total | $5,670 |

His total monthly expenses were $5,577.

Janice was 71 years old.  She worked part-time for Rite Aid.  Her monthly income consisted of $1,673 in wages and $1,568 in social security, for a total of $3,286.  After paying her monthly expenses, she testified, "[s]ome months I have [$]100, some months I have $50 [left over]."

If and when Janice stopped working, she would lose more than half her income, although she could get another $200 a month ("if I'm lucky") by drawing on $44,000 in a 401(k) account  and $15,000 in an annuity.

In January 2014, Janice filed a motion to modify the judgment by ordering Robert to pay the amount of her share of his retired pay as "non-modifiable spousal support."

In opposition, Robert argued:  (1) the property division in the judgment was final and could not be reopened; (2) "[f]ederal law which supersedes state law . . . prohibits the non-military spouse[']s participation in the member's disability combat pay"; (3) "some or all [of Robert's] income [is] protected from attachment"; and (4) the relevant factors militated against an award of spousal support.

In August 2014, Janice filed a motion for attorney fees.

In January 2015, the trial court held a trial on both pending motions. After the trial, at the trial court's invitation, both parties filed supplemental declarations.

In April 2015, the trial court issued a written ruling. It acknowledged that, under federal law, it could not treat Robert's retired pay as community property. However, it ruled that it was not precluded from "tak[ing] equitable action" to compensate Janice.

It found that "[Robert]'s voluntary election and the resulting termination of [Janice]'s share of the military retirement" was a material change of circumstances. It further found that it would be a "miscarriage of justice" to allow Robert, acting unilaterally, to increase his military-source income from $791 (taxable) to $3,132 (tax-free) while reducing Janice's military-source income from $541 to zero. After considering and weighing each of the factors listed in Family Code section 4320, it concluded that Janice was entitled to receive $541 a month in spousal support.

The trial court further found that, when the original judgment was entered, Janice had a reasonable belief that her share of Robert's retired pay was nonmodifiable. It therefore made its award of spousal support nonmodifiable.

Finally, it awarded Janice $7,180 in attorney fees against Robert.

Robert filed a motion for reconsideration. The trial court denied the motion. Robert filed a timely notice of appeal.[1]

---

[1] The notice of appeal indicated that Robert was appealing both from the judgment and from the order denying his motion for reconsideration. In his opening brief, however, he indicates that he is challenging only the judgment.

6

## II

## EXPERT TESTIMONY

At trial, Janice called Attorney Richard Muir as an expert on the law regarding the treatment of military-source payments in a divorce.

Robert objected to one question to Muir as calling for a legal conclusion; that objection was sustained. He objected to two other questions as irrelevant; those objections were overruled. Otherwise, he did not object to Muir's testimony, nor did he call any expert witness of his own. After trial, in a brief filed in lieu of closing argument, he argued that Muir was unqualified, that his opinions lacked foundation, and that he incorrectly stated the law.

In this appeal, Robert argues that the trial court erred by "adopt[ing] the fuzzy and mis[s]tated opinion of a non-expert . . . ." Ordinarily, Robert would be deemed to have forfeited this argument due to his failure to raise any objection until after trial. (Evid. Code, § 353, subd. (a).)

The problem, however, went beyond the mere admission of evidence. A witness cannot testify to a legal conclusion. This is true even if the witness is an attorney. (*Summers v. A.L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1178-1184.) "[I]t is 'emphatically . . . the province and duty of the judicial department . . . to say what the law is' [citation] . . . ." (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 115.) "'[I]t is thoroughly established that experts may not give opinions on matters which are essentially within the province of the court to decide.' [Citations.]" (*Sheldon Appel Co.*

*v. Albert & Oliker* (1989) 47 Cal.3d 863, 884.) Even if a legal conclusion is admitted, it does not constitute substantial evidence. (*WRI Opportunity Loans II, LLC v. Cooper* (2007) 154 Cal.App.4th 525, 532-533, fn. 3; *Downer v. Bramet* (1984) 152 Cal.App.3d 837, 841-842.)

It follows that, regardless of whether Muir was correct or incorrect, qualified or unqualified, "fuzzy" or precise, his testimony was not substantial evidence. If and to the extent that the trial court relied on it, it erred. However, we need not decide whether this occurred. If the trial court did not rely on Muir's testimony, then the error was harmless. (See Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Elsner v. Uveges* (2004) 34 Cal.4th 915, 939.) If the trial court did rely on Muir's testimony, but Muir was correct about the law, then once again, the error was harmless; the trial court came to the right conclusion. And finally, if the trial court relied on Muir's testimony and Muir was incorrect about the law, then we must reverse based on the resulting legal error.

For these reasons, we have not included any of Muir's testimony in our statement of facts (part I, *ante*). (And for the same reasons, we also have not included any of the legal conclusions to which Robert testified, purportedly also as an expert, based on his own experience.)

8

# III

## FEDERAL LAW PROHIBITING THE DIVISION OF RETIRED PAY

## AS COMMUNITY PROPERTY IN A DIVORCE

Robert contends that, as a matter of federal law, the trial court could not award Janice any interest, directly or indirectly, in his veteran's disability benefits.

A.      *General Legal Principles*.

A member of the armed services who retires based on length of service becomes entitled to retired pay.  (10 U.S.C. §§ 1401 [Army], 6333 [Navy], 8991 [Air Force].)

Meanwhile, a veteran who becomes disabled as a result of an injury suffered or a disease contracted in the line of duty becomes entitled to disability benefits.  (38 U.S.C. §§ 1110 [wartime disability], 1131 [peacetime disability].)[2]

"In order to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay.  [Citation.]" (*Mansell v. Mansell* (1989) 490 U.S. 581, 583, fn. omitted; see 38 U.S.C. §§ 5304-5305.)  "For example, if a military retiree is eligible for $1500 a month in retirement pay and $500 a month in disability benefits, he must waive $500 of retirement pay before he can receive any disability benefits." (*Mansell v. Mansell*, *supra*,

---

[2]      Any discussion of military disability benefits in this opinion is limited to disability benefits under title 38 of the United States Code.  Title 10, chapter 61 of the United States Code section 1201 et seq. provides a separate scheme of disability benefits that is beyond the scope of our opinion.

at p. 584, fn. 1.)  Military disability benefits are not taxable.  (38 U.S.C. § 5301(a).)

Thus, normally a retiree is better off by making such a waiver.

Under California law, military retired pay that accrues based on service during marriage is community property.  (*In re Marriage of Barnes* (1987) 43 Cal.3d 1371, 1374-1375; *In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 782.)  However, in 1981, the United States Supreme Court held that "the federal military retirement scheme" conflicts with — and therefore preempts — state law treating military retired pay as community property.  (*McCarty v. McCarty* (1981) 453 U.S. 210, 223.)

In 1982, Congress enacted the federal Uniformed Services Former Spouses Protection Act (FUSFSPA) specifically to change the outcome in *McCarty*.  FUSFSPA allows a state court in a community property jurisdiction to treat "disposable retired pay" as community property.  (10 U.S.C. § 1408(c)(1).)  However, its definition of "disposable retired pay" excludes any retired pay that has been waived in order to receive disability benefits.  (10 U.S.C. § 1408(a)(4)(B).)

Accordingly, in 1989, in *Mansell v. Mansell*, *supra*, 490 U.S. 581, the United States Supreme Court held that FUSFSPA left *McCarty* in place with respect to waived retired pay, and therefore federal law prohibits a state court from treating waived retired pay as community property.  (*Mansell v. Mansell*, *supra*, at pp. 594-595.)  It acknowledged that its holding "may inflict economic harm on many former spouses," but it felt constrained by "the plain language of the statute" as well as by the statute's legislative history.  (*Id*. at p. 594.)  Justice O'Connor, dissenting, protested that "[t]he

10

harsh reality of this holding is that former spouses . . . can, without their consent, be denied a fair share of their ex-spouse's military retirement pay simply because he elects to increase his after-tax income by converting a portion of that pay into disability benefits." (*Id*. at p. 595 [dis. opn. of O'Connor, J.]; see also *id*. at p. 601 [same].)

B.      *In re Marriage of Krempin*.

In the wake of *Mansell*, state courts have struggled with whether they have jurisdiction to grant a civilian spouse any remedy whatsoever for a military spouse's waiver of retired pay.

In California, the leading case is *In re Marriage of Krempin* (1999) 70 Cal.App.4th 1008.[3] There, the trial court entered a judgment, pursuant to a marital

---

[3]      Very recently, in *In re Marriage of Chapman* (2016) 3 Cal.App.5th 719 also dealt with this issue. We choose not to rely on *Chapman*, because it is still subject to Supreme Court review. We note, however, that it came to the same conclusion as we do.

Janice also cites *In re Marriage of Smith* (2007) 148 Cal.App.4th 1115. In fact, she has characterized the relief she is seeking as "Krempin/Smith relief."

*Smith* held that, when entering a divorce judgment, the trial court could order that, if, in the future, the military spouse waived retired pay in order to receive disability benefits, the military spouse would have to reimburse the civilian spouse for the latter's share of the waived retired pay. The court reasoned that "*Mansell* held merely that the federal law does not grant state courts the power to divide 'military retirement pay that *has been* waived to receive veterans' disability benefits.' [Citation.] In this case, so far as we can tell from the record, [the military spouse] was not receiving any disability payments when judgment was entered so the court did not divide retirement pay that 'has been waived.'" (*In re Marriage of Smith*, *supra*, 148 Cal.App.4th at pp. 1123-1124.)

The judgment here contains no similar express indemnity provision. Moreover, Robert waived retired pay in or around 2013; in 2015, *after* his retired pay "ha[d] been waived," the trial court ordered him to compensate Janice for her lost share of the retired pay. Thus, *Smith* does not support Janice's claim that she was entitled to a remedy in this scenario. Indeed, if anything, it implies that *Mansell* would prohibit such an order.

11

settlement agreement, awarding the wife 25 percent of the husband's military retired pay. (*In re Marriage of Krempin*, *supra*, at pp. 1010-1011.) After the husband retired, the wife began receiving $327 a month as her share of his retired pay. Thereafter, the husband was determined to be disabled. He waived retired pay and began receiving disability payments of $2,051 a month, which meant that his retired pay went to zero. The trial court denied the wife's motion to reinstate the payments to her. (*Id*. at p. 1011.)

The appellate court began by surveying out-of-state cases. It found that: "Courts in other states have protected the non-military spouse's interest through various means.

"Some courts have found that the waiver of retirement pay and resulting reduction in the pension payment to the nonmilitary spouse were changed circumstances which permitted reassessment of support payments or redistribution of marital property. [Citations.]

"In some cases the courts have enforced judgments which provided that the military spouse would take no action to diminish his or her retirement pay, and would indemnify the nonmilitary spouse for any such diminution. [Citations.] . . . Because the military spouse is free to satisfy the indemnity obligation with assets other than the disability benefits, there is no division of those benefits in contravention of *Mansell*. [Citations.] [¶] *This same result has been reached even where there was no express indemnity agreement*." (*In re Marriage of Krempin*, *supra*, 70 Cal.App.4th at p. 1013, italics added.)

12

In sum, then, "'[a] majority of state courts,' on one theory or another, 'take equitable action to compensate the former spouse' when that spouse's share of retirement pay is reduced by the other's postjudgment waiver. [Citation.] A review of the out-of-state precedents confirms that this result is nearly universal." (*In re Marriage of Krempin*, *supra*, 70 Cal.App.4th at p. 1015.)

The court then stated: "If the trial court were to conclude that the parties intended for [the wife] to continue to receive her original share of [the husband]'s retirement pay even if he waived all or a portion of that pay to obtain disability benefits, the *Mansell* case would not prevent the court from giving appellant the benefit of her bargain on [a] resulting trust theory . . . . [Citation.]" (*In re Marriage of Krempin*, *supra*, 70 Cal.App.4th at p. 1021, fn. omitted.) Thus, it remanded to the trial court for further proceedings. (*Id.* at p. 1022.)

C.    *Out-of-State Cases*.

As *Krempin* mentioned, there are a number of relevant out-of-state cases. Indeed, we have an advantage over the *Krempin* court, because additional out-of-state cases have been decided since *Krempin*, affording us almost an embarrassment of riches.

It is the clear majority rule that *Mansell* does not prevent a state court from ordering a military spouse to reimburse a civilian spouse for retired pay that the military spouse has waived in order to receive disability benefits. We count 21 states as so holding: *In re Marriage of Howell* (2015) 238 Ariz. 407, 410-411 [361 P.3d 936, 939-

940],**4** pet. for cert. filed Feb. 16, 2016; *In re Marriage of Lodeski* (Colo.Ct.App. 2004) 107 P.3d 1097, 1101; *Blann v. Blann* (Fla. App. 2007) 971 So.2d 135, 137; *Perez v. Perez* (2005) 107 Haw. 85, 90-91 [110 P.3d 409, 414-415]; *McHugh v. McHugh* (1993) 124 Idaho 543, 545 [861 P.2d 113, 115]; *In re Marriage of Neilsen* (2003) 341 Ill.App.3d 863, 869 [792 N.E.2d 844, 849]; *Bandini v. Bandini* (Ind. App. 2010) 935 N.E.2d 253, 264; *Black v. Black* (Me. 2004) 842 A.2d 1280, 1285; *Dexter v. Dexter* (1995) 105 Md.App. 678, 686 [661 A.2d 171, 174]; *Krapf v. Krapf* (2003) 439 Mass. 97, 108 [786 N.E.2d 318, 326]; *Megee v. Carmine* (2010) 290 Mich.App. 551, 574 [802 N.W.2d 669, 682]; *Shelton v. Shelton* (2003) 119 Nev. 492, 496 [78 P.3d 507, 509], cert. den. (2004) 541 U.S. 960; *Whitfield v. Whitfield* (2004) 373 N.J.Super. 573, 582-583 [862 A.2d 1187, 1192]; *Hadrych v. Hadrych* (2006) 140 N.M. 829, 832 [149 P.3d 593, 596]; *Hillard v. Hillard* (2012) 223 N.C.App. 20, 24-25 [733 S.E.2d 176, 180-181]; *Hayes v. Hayes* (Okla.Civ.App. 2007) 164 P.3d 1128, 1130-1132; *Hayward v. Hayward* (Pa.Super.Ct. 2005) 868 A.2d 554, 559-560; *Resare v. Resare* (R.I. 2006) 908 A.2d 1006, 1009-1010;

---

**4**     One of the few out-of-state cases that the parties cite is *Merrill v. Merrill* (2012) 230 Ariz. 369 [284 P.3d 880], which followed the majority rule.  Robert claims that *Merrill* is unpublished, which is incorrect.  Robert also claims that *Merrill* was overruled, which is inaccurate.  Actually, it was partially superseded by state statutes. (Ariz. Rev. Stat. §§ 25-318.01, 25.530.)  However, the Arizona Supreme Court has held that these statutes apply only when the original divorce judgment dividing the retired pay was entered after the statutes' effective date.  (*In re Marriage of Howell*, *supra*, 361 P.3d at pp. 940-941.)  With respect to divorce judgments entered *before* the statutes' effective date, the Arizona Supreme Court adopted the majority rule.  (*Id*. at pp. 938-939.)

*Hisgen v. Hisgen* (S.D. 1996) 554 N.W.2d 494, 498; *Johnson v. Johnson* (Tenn. 2001) 37 S.W.3d 892, 897-898.[5]

In general, the reasoning in such cases has two simple premises. First, "the non-military spouse has a vested interest in his or her portion of [the retired pay] as of the date of the court's decree and . . . the vested interest cannot thereafter be unilaterally diminished by an act of the military spouse." (*Provencio v. Leding* (2011) 2011 Ark.App. 53 [at *3] [381 S.W.3d 82, 84]; but see *Ashley v. Ashley* (1999) 337 Ark. 362 [990 S.W.2d 507].) Second, "because the military spouse is free to satisfy the indemnity obligation with assets other than the disability benefits, there is no division of disability benefits in contravention of *Mansell*. [Citations.]" (*Perez v. Perez*, *supra*, 110 P.3d at p. 414.)

A minority of states hold that *Mansell* absolutely prohibits a state court from awarding the civilian spouse any remedy whatsoever for the loss of the retired pay. We count five: *Ex parte Billeck* (Ala. 2000) 777 So.2d 105, 108-109; *In re Marriage of Pierce* (1999) 26 Kan.App.2d 236, 240 [982 P.2d 995, 998]; *Mallard v. Burkart* (Miss. 2012) 95 So.3d 1264, 1272; *Ex parte Burson* (Tex. 1981) 615 S.W.2d 192, 196;

---

[5] In determining whether a state follows the majority or minority rule, there is some room for the exercise of judgment; reasonable minds may differ. We have tried to take a strict view and to count a state as adhering to one rule or the other only if it appears that it would apply that rule in a non-fact-specific manner. For example, we have omitted states in which the result would turn on whether parties have a marital settlement agreement that includes an express indemnity provision. (Compare *Strassner v. Strassner* (Mo.Ct.App. 1995) 895 S.W.2d 614, 617-618 with *Morgan v. Morgan* (Mo.Ct.App. 2008) 249 S.W.3d 226, 233.)

15

*Youngbluth v. Youngbluth* (2010) 188 Vt. 53, 65 [6 A.3d 677, 685].  These courts reason that it is a sort of legal fiction — an end-run around *Mansell* — to say that the military spouse could make payments out of other assets.  "*Mansell* must be followed, even when it leads to seemingly unfair results.  [Citation.]"  (*Youngbluth v. Youngbluth*, *supra*, 6 A.3d at p. 685.)

D.     *Application to This Case*.

The fact that a majority of other states follow the same rule persuades us to adhere to that rule.  Moreover, we agree with the reasoning of the majority:  The military spouse has unilaterally deprived the civilian spouse of a property interest in the retired pay and can be required to reimburse the civilian spouse, albeit not directly out of disability benefits.  "[B]asic state policy prevent[s] a marital partner from depriving the other spouse of a vested community property right by a unilateral decision . . . ."  (*In re Marriage of Mastropaolo* (1985) 166 Cal.App.3d 953, 961-962.)

At the same time, we disagree with the reasoning of the minority, which was that an order for reimbursement is an end-run around *Mansell*.  *Mansell* relied narrowly on a literal reading of the statutory language.  (*Mansell v. Mansell*, *supra*, 490 U.S.at pp. 589, 594.)  It declined to consider the broader purposes behind FUSFSPA, in part because Congress had "mixed purposes":  "[T]he legislative history, read as a whole, indicates that Congress intended both to create new benefits for former spouses and to place limits on state courts designed to protect military retirees."  (*Id.* at p. 594.)  Requiring the military spouse to reimburse the civilian spouse for the latter's share of the lost retired

16

pay — provided the military spouse is not required to make the payments out of disability benefits — does not violate the language of FUSFSPA and thus does not violate *Mansell*.

Also, under *Krempin*, the majority rule is already the law of California. Robert claims that *Krempin* is distinguishable because it involved "*active duty* military personnel." Admittedly, the husband was still on active duty when the judgment was entered. (*In re Marriage of Krempin*, *supra*, 70 Cal.App.4th at pp. 1010-1011.) Nevertheless, the trial court awarded the wife a share of his future retired pay. (*Ibid*.) After that, the husband retired, and after *that*, he waived retired pay so he could receive disability benefits. (*Id*. at p. 1011.) Thus, *Krempin* is on point. We fail to see why the husband's active duty status when the judgment was entered is relevant.[6]

We do not necessarily agree with *Krempin* in every respect. In part IV, *post*, we will disagree somewhat with its conclusions regarding the intent of the parties. And in part V, *post*, we will disagree somewhat with its choice of remedy.

For now, however, we do agree that a state court can order a military spouse who has waived retired pay to reimburse a civilian spouse for the latter's loss of a community property interest in the retired pay without violating *Mansell*.

---

[6] Robert also argues that *Krempin* is distinguishable because there (1) the parties had an express indemnity agreement, and (2) the divorce judgment included a reservation of jurisdiction. These arguments do not impugn *Krempin*'s central holding that a state court can grant a remedy to the civilian spouse without violating *Mansell*. Rather, they go to issues of the intent of the parties, which we will deal with in part IV, *post*, and finality of judgments, which we will deal with in part VI, *post*.

17

IV

THE INTENT OF THE PARTIES

Robert contends that there was insufficient evidence that the parties intended to protect Janice against the consequences of a waiver of Robert's retired pay.

*Krempin* indicated that whether the civilian spouse is entitled to a remedy for the military spouse's waiver of retired pay depends on the terms of the judgment and may require the interpretation of those terms. (*In re Marriage of Krempin*, *supra*, 70 Cal.App.4th at p. 1018.) It noted five aspects of the judgment before it that had some bearing on this question.

First, the judgment did not include an express indemnity provision. "However, while [the wife]'s claim would be stronger if the judgment or stipulation included an indemnity provision, the absence of an indemnity agreement is not necessarily fatal to her position." (*In re Marriage of Krempin*, *supra*, 70 Cal.App.4th at p. 1019.)

Second, the judgment referred to retirement benefits paid by the Defense Accounting and Finance Center; thus, it implicitly excluded disability benefits paid by the VA. (*In re Marriage of Krempin*, *supra*, 70 Cal.App.4th at p. 1019.)

Third, the judgment identified a specific amount ($327) that was to be paid to the wife monthly, and it required the husband to make these payments until the Defense Accounting and Finance Center took over. (*In re Marriage of Krempin*, *supra*, 70 Cal.App.4th at pp. 1019-1020.) "This suggests an understanding that [the husband] was ultimately responsible for insuring specific monthly payments." (*Id*. at p. 1020.)

18

Fourth, the judgment included a reservation of jurisdiction "'to make such orders relating to [the husband's] retirement benefits as are necessary to carry out this agreement.'" (*In re Marriage of Krempin*, *supra*, 70 Cal.App.4th at p. 1020.) "[T]he very fact that the parties' agreement includes a reservation of jurisdiction on this subject suggests that they may have anticipated future contingencies such as waivers of retirement pay which might call for new arrangements to preserve the original bargain." (*Ibid*.)

Fifth, the marital settlement agreement provided that it was not to be construed in favor of or against either party. (*In re Marriage of Krempin*, *supra*, 70 Cal.App.4th at p. 1020.) "This language may support [the wife's] contention that the agreement was not strictly limited to retirement payments as opposed to disability benefits, but was intended instead simply to provide her with a certain level of income." (*Ibid*.)

The court concluded: "Since the provisions of the judgment and stipulation are reasonably susceptible to both sides' constructions, the parties may offer extrinsic evidence to support their positions. [Citations.]" (*In re Marriage of Krempin*, *supra*, 70 Cal.App.4th at p. 1020.) Hence, "a remand for further proceedings is required." (*Id*. at p. 1018; see also *id.* at pp. 1010, 1020, 1022.)

We agree that the terms of the stipulated judgment are controlling; indeed, this is almost a truism. Certainly a divorcing couple could choose to provide in their marital settlement agreement that the military spouse has an absolute right to waive his or her

19

retirement pay, without any obligation to reimburse the civilian spouse. However, we believe there should be a presumption against this interpretation.

There is a need for uniformity and predictability in this area, particularly given the federal interests involved. Also, as our Supreme Court has noted, many if not most family law litigants are self-represented. (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1368.) As our research has made us all too aware, the whole subject of spouses' rights to military benefits in a divorce is extremely arcane — even for lawyers. It would be a mistake to give too much weight to minor differences in wording when that wording was not necessarily chosen with these issues in mind.

In light of these concerns, we begin with a commonsense presumption that the parties intend the civilian spouse's property right to the military spouse's retired pay to be a secure source of income — except, of course, in the event of the military spouse's death, which the civilian spouse can insure against. Then we turn to the indicia of intent identified in *Krempin* to determine whether they rebut the presumption.

First, here there was no express indemnity. However, *Krempin* held that this is not controlling, and for the reasons just outlined, we agree. Second, the judgment referred to Robert's retired pay and did not mention his disability benefits. However, this is consistent with the law that disability benefits are the military spouse's separate property; it is also consistent with our presumption that the parties intended Janice's right to the retired pay to be indefeasible. Third, the judgment identified a specific dollar amount that Robert was to pay to Janice monthly, until the military began paying her directly.

Fourth, there was no reservation of jurisdiction over Robert's retired pay. Again, however, this seems perfectly consistent with our presumption that Janice's right to the retired pay was intended to be indefeasible. Fifth, unlike in *Krempin*, the judgment did not specifically provide that it was not to be construed against either party. This would simply mean that Civil Code section 1654 would apply; it provides that: "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Here, Janice's attorney drafted the judgment. However, in light of our presumption, there is no uncertainty and hence no need to apply a construction against the drafter.

In sum, because there is *no* evidence that the parties *did* intend Robert to be able to defeat Janice's property right in his retired pay, we conclude that they *did not* intend this.

V

THE CHOICE OF REMEDY

Robert contends that, even assuming Janice is entitled to some sort of remedy for his waiver of retired pay, an award of spousal support is not an appropriate remedy.

Janice urged the trial court to use an award of spousal support as the remedy in this case. This had several advantages for her. First, it avoided any problem with finality (see part VI, *post*), because the judgment expressly reserved jurisdiction over spousal support. Second, unlike other money judgments (see part IX, *post*), a support order would be enforceable against Robert's disability benefits (although only up to the amount of his waiver of retired pay) (42 U.S.C. §§ 659(a), 659(h)(1)(A)(ii)(V), 659(h)(1)(B)(iii);

21

5 C.F.R. § 581.103; *United States v. Murray* (1981) 158 Ga.App. 781, 785 [282 S.E.2d 372, 375]), against his CRSC (Dept. of Def. Fin. Mgmt. Reg. 7000.14–R, vol. 7B, ch. 63, § 630101(C)(3) (Nov. 2015) (Fin. Mgmt. Reg.)**7**), against his social security benefits (42 U.S.C. §§ 659(a), 659(h)(1)(A)(ii)(I); *DeTienne v. DeTienne* (D.Kan. 1993) 815 F.Supp. 394, 396-397), and against his state teacher's disability benefits (Code Civ. Proc., § 704.110, subd. (c); Ed. Code, § 22006).

In part III, *ante*, we noted that a majority of out-of-state cases hold that, when a military spouse waives retired pay in order to receive disability benefits, the civilian spouse is entitled to a remedy. Of these cases, the vast majority further hold that the appropriate remedy is an order that the military spouse make monthly payments to the civilian spouse in the same amount as the lost retired pay. The result is the same as if, in a marital settlement agreement, the civilian spouse had expressly indemnified the civilian spouse against any reduction in or loss of the retired pay.

A handful of cases, however — a minority of the majority — hold that the appropriate remedy is increased spousal support.

In *In re Marriage of Perkins* (2001) 107 Wn.App. 313 [26 P.3d 989], the trial court ordered the military spouse to pay the civilian spouse the same amount as her lost share of his retired pay, as "permanent compensatory spousal maintenance . . . ." (*Id.* at p. 991, italics omitted.) The appellate court held that *Mansell* prohibited any order for

---

**7** Available at <http://comptroller.defense.gov/Portals/45/documents/fmr/Volume_07b.pdf> [as of Nov. 2, 2016].

"dollar-for-dollar" reimbursement of the lost retired pay, even if it was labeled "maintenance." (*In re Marriage of Perkins*, *supra*, at pp. 995-996.) However, a "dissolution court . . . may consider a spouse's entitlement to an *undivided* veterans' disability pension . . . as one factor relevant to an award of maintenance . . . , provided of course that it follows the usual state-law rules . . . ." (*Id*. at p. 994, fns. omitted.) In other words, "a trial court may award maintenance after considering all relevant factors, of which a military disability pension may be one." (*Id*. at p. 997.) Thus, it remanded "for reconsideration of maintenance." (*Ibid*.)[8]

In *Longanecker v. Longanecker* (Fla. App. 2001) 782 So.2d 406, the trial court ordered: "As and for lump sum alimony to effectuate an equitable distribution of the Husband's military retirement pension as a marital asset, the Husband shall pay or direct to be paid to the Wife the sum equal to $157.76 from each monthly net disposable retirement payment . . . ." (*Id*. at p. 408.) The appellate court held that this violated *Mansell*, to the extent that it ordered the military spouse to make the payments directly out of his disability benefits. (*Longanecker v. Longanecker*, *supra*, at p. 407.) However, it approved of ordering the payments in the form of support. (*Id*. at pp. 407-408.)

---

[8] As authority for awarding spousal support, Janice cites *In re Marriage of Jennings* (1999) 138 Wn.2d 612 [980 P.2d 1248]. There, the trial court had awarded the civilian spouse "compensatory spousal support" to replace her lost retired pay on a dollar-for-dollar basis. (*Id*. at p. 1252.) On appeal, however, the only issue was whether this violated state rules against reopening a final judgment. (*Id*. at pp. 1254-1256.) Thus, the court had no occasion to discuss whether spousal support — either on a sliding multifactor scale or on a dollar-for-dollar basis — was an appropriate remedy.

California law, however, does not allow a trial court to order dollar-for-dollar reimbursement under the guise of support. "Permanent spousal support 'is governed by the statutory scheme set forth in [Family Code] sections 4300 through 4360. [Family Code s]ection 4330 authorizes the trial court to order a party to pay spousal support in an amount, and for a period of time, that the court determines is just and reasonable, based on the standard of living established during the marriage, taking into consideration the circumstances set forth in [Family Code] section 4320.' [Citations.] The statutory factors include the supporting spouse's ability to pay; the needs of each spouse based on the marital standard of living; the obligations and assets of each spouse, including separate property; and any other factors pertinent to a just and equitable award. [Citation.] 'The trial court has broad discretion in balancing the applicable statutory factors and determining the appropriate weight to accord to each, but it may not be arbitrary and must both recognize and apply each applicable factor.' [Citation.]" (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1442-1443.) By contrast, awarding dollar-for-dollar reimbursement does not involve consideration of any of these factors; in setting the amount of such reimbursement, the trial court would exercise no discretion.

Here, the trial court purported to consider all of the factors listed in Family Code section 4320; it made detailed findings with respect to each of these factors. Nevertheless, it came up with a support amount that was identical, down to the dollar, to the amount of retired pay that Janice had lost. Obviously, the trial court subordinated all

24

of its other findings to the fact that Janice had been deprived of $541 in retired pay. This was arbitrary and an abuse of discretion.**9**

Thus, we reject a dollar-for-dollar award of support as a remedy. More generally, however, we reject *any* award of support as a remedy, even when the amount of support is determined in scrupulous accordance with the factors listed in Family Code section 4320. We recognize that whenever a military spouse waives retired pay in order to obtain disability benefits, the civilian spouse has increased need, and the military spouse has an increased ability to pay. Nevertheless, the wrong that is done — the wrong that cries out for a remedy — is that the civilian spouse has been deprived of a community property right.

"[I]t must be kept in mind that spousal support considerations are separate and distinct from property division concepts." (*In re Marriage of White* (1987) 192 Cal.App.3d 1022, 1026.) "Support *cannot* be awarded in lieu of an equal division of

---

**9** Robert contends that particular findings regarding the Family Code section 4320 factors were not supported by the evidence. In light of our other holdings, we need not consider this contention.

Robert also contends that Janice gave false testimony. It is not clear what he wants us to do about it. He does not explain how the supposed falsity was prejudicial; to the contrary, he asserts that it was "obvious to everyone in the courtroom" and that he "discussed [it] in some detail in [his] Closing Brief." In any event, the asserted falsehoods pertained to need and other factors relevant to an award of spousal support, as listed in Family Code section 4320. In light of our holding that the trial court erred by awarding spousal support at all, Robert needs no other remedy for them.

community property [citation] or to compensate for an unequal division." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2016) ¶ 6:980, p. 6-507.)

The civilian spouse should be entitled to recover the amount lost, regardless of earning capacity, other assets and obligations, or the former marital standard of living. Thus, the appropriate remedy is dollar-for-dollar compensation, not a variable amount set in the trial court's discretion after weighing a host of factors. (See *In re Marriage of Stenquist*, *supra*, 21 Cal.3d at p. 787, fn. 8 ["[A]djustments in the amount of alimony awarded will not mitigate the hardship caused the wife by the denial of her community interest . . . . '[T]he spouse "should not be dependent on the discretion of the court . . . to provide her with the equivalent of what should be hers as a matter of absolute right."' [Citation.]"].)

In addition, unless otherwise agreed, a support award terminates automatically if the supported spouse remarries. (Fam. Code, § 4337.) However, remarriage should have no effect on a civilian spouse's community property rights.

Similarly, unless otherwise agreed, a support order may be modified at any time (Fam. Code, §§ 3603, 3651, subd. (a)), based on changed circumstances (*In re Marriage of Khera and Sameer* (2012) 206 Cal.App.4th 1467, 1479). By contrast, an award of a share of a military spouse's retired pay to a civilian spouse is final and nonmodifiable; an award of compensation for the loss of that share should likewise be nonmodifiable. In this case, the trial court attempted to overcome this problem by making its support award

26

unmodifiable. However, as Robert points out, this provision was statutorily unauthorized and erroneous.

Janice cites *In re Marriage of Olsen* (1994) 24 Cal.App.4th 1702 as authority supporting an award of spousal support. There, the trial court awarded the wife a community property share of the husband's military retired pay, on the condition that she waive any spousal support, which she did. (*Id*. at p. 1705.) Thereafter, FUSFSPA was amended so as to provide that a state court cannot treat military retired pay as community property. (*Ibid*.) In response, the trial court reinstated the wife's spousal support. (*Ibid*.) The appellate court held that, even though the trial court's previous order had been final, and even though the trial court had not expressly reserved jurisdiction over spousal support, the trial court had jurisdiction to do so. (*Id*. at pp. 1705-1707.)

The only aspect of *Olsen* that is even tangentially relevant to the issue before us is the *trial court's* order requiring the wife to waive spousal support in order to receive her community property interest in the husband's military retired pay. Arguably, this suggests that the two are somehow fungible. However, the parties did not appeal from that order. Moreover, in the appeal that they did file, there was no issue with respect to whether that previous order was valid. "'"'[I]t is axiomatic that cases are not authority for propositions not considered.'"' [Citation.]" (*Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 641.)

As mentioned earlier, we do not agree with *Krempin* that a resulting trust is an appropriate remedy. *Krempin* reasoned that the military spouse has "'"effectively

27

utilized"''" the civilian spouse's interest in the retired pay to "''"acquire"''" disability benefits for him or herself alone.  (*In re Marriage of Krempin*, *supra*, 70 Cal.App.4th at p. 1017.)  "''"The situation presented is a classic one for the imposition of a resulting trust.  When one person furnishes the money or other thing of value with which property is acquired and title to the property is taken in the name of another, absent the intention of the one to confer a gift upon the other, the titleholder is a trustee upon a resulting trust of the property for the benefit of the person who furnished the money or other thing of value by which the property was acquired. . . .'''"  (*Ibid.*)

The problem with this is that it gives the civilian spouse an interest in *specific property* — namely, the military spouse's disability benefits.  But this is precisely what *Mansell* forbids.  Hence, as far as we have been able to determine, no other court has ever used a resulting trust as a remedy for a civilian spouse's lost interest in a military spouse's waived retired pay.

We believe it is better to hold that the military spouse has caused the loss or destruction of a property right belonging to the civilian spouse and should therefore be required to pay the civilian spouse money damages.  (See Civ. Code, § 3281 ["Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages."].)

Here, the judgment characterized Robert's retired pay as community property and awarded 43.1 percent of it to Janice.  By waiving his retired pay so that he could receive disability benefits, Robert effectively transferred 100 percent of his retired pay to the

28

United States government. Like the court in *Krempin*, we do not mean to characterize this action as fraudulent, a breach of the implied covenant of good faith and fair dealing, contempt of court, or otherwise blameworthy. (*In re Marriage of Krempin*, *supra*, 70 Cal.App.4th at p. 1017.) However, it upset the division of property as adjudicated in the judgment. Thus, Janice became entitled to damages for her lost property right.

Although the trial court erred by awarding spousal support, we can remedy this error by directing it to award Janice $541 a month, not as spousal support, but as damages.

## VI

## THE FINALITY OF JUDGMENTS

Robert contends that the trial court's order violates the finality of judgments.[10]

"[P]ublic policy demands finality of litigation in the area of family law." (*In re Marriage of Thomas* (1984) 156 Cal.App.3d 631, 638.) Thus, "[g]enerally, once a marital dissolution judgment has become final, the court loses jurisdiction to modify or alter it. [Citations.] . . . [M]arital property rights and obligations adjudicated by a final

---

**10**     Robert also argues that the passage of time since the 1986 judgment made an award of spousal support inappropriate. Thus, he argues that Janice was not entitled to spousal support because she had had ample time to become self-supporting. Similarly, he argues that the significance of the marital standard of living had become attenuated. In part V, *ante*, however, we held, for other reasons, that the trial court erred by choosing spousal support as a remedy. Thus, we need not address these arguments. We note them here only to point out that they are *different* from an argument based on the finality of judgments.

judgment cannot be upset by subsequent efforts to 'modify' the judgment." (*In re Marriage of Thorne and Raccina* (2012) 203 Cal.App.4th 492, 499.)

One exception to this general rule is that "a judgment may contain an express reservation of jurisdiction authorizing the court to subsequently modify it. [Citations.]" (*In re Marriage of Thorne and Raccina*, *supra*, 203 Cal.App.4th at p. 500.) Here, the judgment contained an express reservation of jurisdiction regarding spousal support. Thus, the trial court did not violate finality principles by making a new order for spousal support. Indeed, the very existence of the reservation of judgment may well have influenced its decision to choose spousal support as a remedy.

*Krempin* did not need to address this issue, because there, the stipulated judgment included a reservation of jurisdiction "'to make such orders relating to [the husband's] retirement benefits as are necessary to carry out this agreement.'" (*In re Marriage of Krempin*, *supra*, 70 Cal.App.4th at p. 1020.)

Here, the 1986 judgment did not contain any similar express reservation of jurisdiction regarding retirement benefits. We therefore consider Robert's argument regarding finality of judgments, not as it pertains to an award of spousal support, but rather as it pertains to an award of damages.

Once a divorce judgment has been entered, it "may be enforced . . . by any other order as the court in its discretion determines from time to time to be necessary." (Fam. Code, § 290.) "To the extent that a judgment of dissolution is not self-executing in respect of any division of property therein ordered, the court retains jurisdiction to make

30

such further orders as are appropriate to compel obedience to its judgment." (*Bonner v. Superior Court* (1976) 63 Cal.App.3d 156, 165.)

In *In re Marriage of Justice* (1984) 157 Cal.App.3d 82, the trial court entered a stipulated judgment awarding the wife a specified percentage of the husband's future police officer pension. (*Id*. at p. 85.) Ultimately, the husband retired on a disability pension rather than a longevity pension; he therefore refused to pay the wife anything. (*Ibid*.) On the wife's motion, the trial court ordered the pension administrator to pay the wife her share of what the husband would have received if he had retired on a longevity pension. (*Id*. at pp. 85-86.)

On appeal, the husband argued "that because the judgment awarded to [the wife] one-half of the community interest in his service retirement benefits and did not reserve the court's jurisdiction over any disability retirement benefits to which he might have become entitled, the court was without jurisdiction to 'divide' [the husband]'s disability pension by postjudgment order." (*In re Marriage of Justice*, *supra*, 157 Cal.App.3d at p. 86.)

The appellate court ruled: "The contention is without merit. A judgment entered in a marital dissolution proceeding 'may be enforced by the court . . . by such . . . order or orders as the court in its discretion may from time to time deem necessary.' (Civ. Code, § 4380.)[11] The postjudgment order enforces the judgment by securing to [the wife] her

_____

**11**     After *Justice* was decided, Civil Code section 4380 was repealed and replaced by Family Code section 290. Family Code "[s]ection 290 continues former

*[footnote continued on next page]*

31

share of the community interest in [the husband]'s service retirement benefits; the order does not by its terms award to [the wife] any portion of [the husband]'s disability pension." (*In re Marriage of Justice*, *supra*, 157 Cal.App.3d at p. 86.)

As already noted, out-of-state decisions hold that a military spouse can be required to compensate a civilian spouse for the loss of waived retired pay, despite *Mansell*. Some of these have further held that this is permitted enforcement of the judgment, rather than a prohibited modification.

For example, in *Janovic v. Janovic* (Fla. App. 2002) 814 So.2d 1096, the court stated: "A trial court may not, in the guise of an enforcement proceeding, readdress the distribution of property when the property has been previously distributed, [citations], nor may the trial court reallocate property based on an involuntary change in circumstances. A trial court, however, retains jurisdiction to enforce a final dissolution judgment. [Citation.] Where a party only seeks to receive what is contemplated by the property settlement agreement incorporated into the final dissolution judgment, the relief sought is enforcement rather than modification. [Citations.] Therefore, a trial court may order an equivalent benefit as part of an enforcement action where one spouse takes a voluntary action which defeats the intent of the parties. [Citation.]" (*Id*. at pp. 1100-1101, fn. omitted.)

---

*[footnote continued from previous page]*
Civil Code Section 4380 without substantive change . . . ." (Cal. Law Revision Com. com., 29C West's Ann. Fam. Code (2004 ed.) foll. § 290, p. 96.)

In *Whitfield v. Whitfield*, *supra*, 862 A.2d 1187, the court said: "It is important to emphasize the procedural posture of this case. The issue is one of enforcement of a prior equitable distribution award, not a present division of assets. Wife does not seek to divide her former husband's disability benefits in violation of *Mansell*. Nor does she seek a greater percentage of her husband's military pension than she originally received at the time of his retirement pursuant to court order. Moreover, wife does not seek to alter the terms of her veteran-spouse's retirement plan or to compel the Department of Defense to make direct payments to her in excess of those permitted by federal law. The remedy she seeks, and that to which she is entitled, is an enforcement of the original order which was in effect before her former husband retired and unilaterally elected the waiver." (*Id*. at p. 1192; see also *Megee v. Carmine*, *supra*, 802 N.W.2d at pp. 679-680 [quoting and agreeing with *Whitfield*].)

Likewise, *Hadrych v. Hadrych*, *supra*, 149 P.3d 593 stated: "Husband's unilateral action significantly reduced benefits to which Wife was entitled under the final decree. While we agree that there was no language expressly addressing the change in retirement benefits that would occur if Husband were to become disabled, it is also true that the decree awarded to Wife 50% of the retirement benefits that had accrued to date of divorce. Husband's argument that no language prohibited him from electing to waive retirement benefits and convert them to disability benefits is not persuasive. There is no language in the decree permitting him to do so, either. We think it is quite a stretch for him to argue that the trial court could not intervene to address his attempt to significantly

33

reduce the 50-50 distribution set by the decree. Consequently, we hold that the court's order constituted enforcement because the order maintained Wife's benefits at the same level as was established by the decree. [Citations.] The order simply enforces the division set by the final decree, guarantees that the reasonable expectations of the parties concerning the allocation of the retirement benefits would be protected, and ensures that Husband's unilateral attempt to reduce Wife's benefits would go unrewarded. [Citation.] Under the facts in our case, we conclude that the trial court had jurisdiction to enter the order. Husband's technical argument rings hollow, and we reject it." (*Id*. at p. 598; see also *Black v. Black*, *supra*, 842 A.2d at p. 1286; *Hayes v. Hayes*, *supra*, 164 P.3d at p. 1131; *In re the Marriage of Warkocz* (Colo.App. 2006) 141 P.3d 926, 931; contra, *Youngbluth v. Youngbluth*, *supra*, 6 A.3d at pp. 685-688.)

We therefore conclude that the trial court had jurisdiction to make an award of damages to compensate Janice for her lost property right.

VII

COMBAT-RELATED SPECIAL COMPENSATION (CRSC)

Here, in addition to disability benefits, Robert was also receiving CRSC. Both parties make much of this fact. For example, Robert purports to distinguish *Krempin* and other cases on the ground that they did not deal with CRSC. Accordingly, we will discuss what CRSC is and how it is involved in this case. We will conclude, however, that it is largely irrelevant.

CRSC is relatively new; it was first enacted in 2002. (10 U.S.C. § 1413a; Pub. L. 107-314 (Dec. 2, 2002) 116 Stat. 2574.)

For purposes of this opinion, CRSC may be viewed as a bonus payment that effectively eliminates the double-dipping penalty for those disabled veterans whose disabilities are combat-related. To be eligible for CRSC, a veteran must be eligible for both retired pay and disability benefits. (10 U.S.C. § 1413a(c)(1), (e).) It follows that, under the rule against double-dipping (38 U.S.C. §§ 5304-5305), the veteran must waive all retired pay up to the amount of the disability benefits. CRSC then basically restores the waived amount of retired pay (10 U.S.C. § 1413a(b)(1), (b)(2)) — but as "special compensation," and specifically *not* as retired pay (see 10 U.S.C. § 1413a(g)). Like disability benefits, CRSC is nontaxable. (26 U.S.C. § 104(a)(4); Fin. Mgmt. Reg., *supra*, § 630101(D).)

Because CRSC is not retired pay — just as disability benefits are not retired pay — under FUSFSPA as construed in *Mansell*, a state court does not have jurisdiction to treat CRSC as community property. (10 U.S.C. §§ 1408(a)(4), (c)(1), 1413a(g); Fin. Mgmt. Reg., *supra*, § 630101(C)(1).)

In this case, however, the trial court did not even arguably award Janice any interest in Robert's CRSC. Before Robert's election to receive CRSC, he was receiving $791 a month in retired pay and Janice was receiving $541 a month in retired pay, for a total of $1,332. After his election, they received no retired pay, but Robert received $1,743 a month in disability benefits. In other words, the retired pay was wiped out by

35

the disability benefits alone.  Robert's election to receive CRSC did not cause any additional reduction in retired pay.  In fact, CRSC *never* requires any *additional* waiver of retired pay.[12]

In many cases, an election to receive CRSC is the event that triggers a waiver of retired pay.  As mentioned, a veteran cannot receive CRSC unless he or she also (1) receives disability benefits and (2) waives retired pay.  Thus, when the civilian spouse asks why his or her flow of retirement benefits has suddenly dried up, he or she may be told it is because the military spouse has elected CRSC.  That appears to be what happened here.  Nevertheless, subject to one exception, CRSC is irrelevant to all of the issues before us.

The one exception is Robert's contention that the trial court erred because all of his income — military disability benefits, state teacher's disability benefits, social security, *and* CRSC — is exempt from creditor's claims.  We now turn to this contention.

VIII

INCOME THAT IS EXEMPT FROM CREDITOR'S CLAIMS

Robert contends that his income is exempt from creditor's claims.[13]

---

[12]    Some courts seem to be confused about this.  (See, e.g., *Provencio v. Leding*, *supra*, 381 S.W.3d at p. 84; *Megee v. Carmine*, *supra*, 802 N.W.2d at p. 673.)

[13]    Robert tends to conflate the issue of nondivisibility under *Mansell* with the issue of exemption from creditor's claims — what he calls "non-attachability." Nevertheless, they are distinct and we discuss them separately.

As already noted, Robert's income consists of disability benefits, state teacher's disability benefits, social security, and CRSC. Subject to one possible exception — which we will assume away for purposes of argument — we agree that these funds are exempt from creditor's claims.[14]

Disability benefits: Disability benefits are "exempt from the claim of creditors, . . . either before or after receipt by the beneficiary." (38 U.S.C. § 5301(a)(1).)

State teacher's disability benefits: State teacher's disability benefits are exempt, both before and after receipt. (Code Civ. Proc., § 704.110; Ed. Code, § 22006; see also Code Civ. Proc., § 703.080, subd. (a) [deposit accounts and cash remain exempt as long as they are traceable to an exempt source].)

Social security: Social security benefits are exempt, both before and after receipt. (42 U.S.C. § 407(a); *S & S Diversified Services, L.L.C. v. Taylor* (D.Wyo. 1995) 897 F.Supp. 549, 552.)

CRSC: Robert asserts that CRSC is similarly "exempt from attachment." However, he does not bother to provide a citation to support this assertion. The statute that exempts disability benefits applies only to "[p]ayments of benefits due or to become due under any law administered by the Secretary" (38 U.S.C. § 5301(a)(1)) — i.e., the Secretary of Veterans Affairs (38 U.S.C. § 101(1)). CRSC is paid by the Defense Accounting and Finance Center (10 U.S.C. § 1413a(a));

---

[14]    As stated in part V, *ante*, all of these exemptions are subject to exceptions for claims for spousal support.

<http://www.dfas.mil/retiredmilitary/disability/payment.html> [as of Nov. 2, 2016]), not by the VA.

Arguably, general sovereign immunity principles might prevent the enforcement of a creditor's claim against future CRSC payments while they are still in the hands of the federal government. (*Dept. of the Army v. Blue Fox, Inc.* (1999) 525 U.S. 255, 264 ["sovereign immunity bars creditors from attaching or garnishing funds in the Treasury"].) However, our research has not revealed any statute or other legal principle that would protect CRSC payments after they have been made.

Nevertheless, for purposes of argument, we will assume that CRSC is exempt from creditor's claims both before and after receipt.

Even if all of Robert's current income is exempt, however, the record shows that he has other assets. He owns a home; although he has a "large" mortgage, he does have some equity, in an amount not shown by the record. He also owns a car.

More to the point, the question of whether Janice was entitled to an award of damages is completely independent from the question of whether Robert has any nonexempt assets or income. It is possible that Janice will end up with a paper judgment that she can never enforce. Or Robert will choose to pay her out of his exempt assets to protect his nonexempt assets from seizure. Or Janice will settle her claim for a significantly reduced amount in exchange for immediate payment out of Robert's exempt assets. Or Robert will win the lottery. But even if he is judgment-proof, she is entitled to a judgment.

38

In sum, then, as long as the trial court does not order Robert to pay Janice out of his disability benefits, *Mansell* is satisfied. Even assuming that, in addition, there must be evidence that Robert has some other assets, there was such evidence here. Whether those other assets are also exempt may affect the enforcement of an award of damages, but it does not affect the propriety of making and entering the award.

IX

ATTORNEY FEES

Robert contends that the trial court erred by awarding attorney fees to Janice.

"Under [Family Code] sections 2030 and 2032, a family court may award attorney fees and costs 'between the parties based on their relative circumstances in order to ensure parity of legal representation in the action.' [Citation.] The parties' circumstances include assets, debts and earning ability of both parties, ability to pay, duration of the marriage, and the age and health of the parties. [Citation.]" (*In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 657.)

"[A] motion for attorney fees and costs in a dissolution proceeding is left to the sound discretion of the trial court. [Citations.] In the absence of a clear showing of abuse, its determination will not be disturbed on appeal. [Citations.] '[T]he trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made. [Citations.]' [Citation.]" (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 768-769.)

39

Robert argues that Janice had sufficient income and savings to pay her counsel. However, "[t]he fact the applicant has sufficient personal resources to pay his or her own attorney fees and costs *does not itself* bar an order requiring the other party to pay part *or all of the fees and costs requested.*" (Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶ 14:158, p. 14-55, italics omitted.)

Robert also complains that the trial court awarded Janice the fees of her expert witness Muir, even though Muir's opinions were "ill-founded" and "misinformed" and Muir "deigned to mislead the Court . . . ." However, he cites no authority for the proposition that this is a basis for denying those fees to Janice (who, after all, still had to pay Muir). "'"[A]n appellate brief 'should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.'"'" [Citation.]" (*Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 777.) In addition, Robert forfeited this argument by failing to raise it below.

To the extent that Robert's reply brief may be construed as raising any other arguments concerning attorney fees, we deem them forfeited by his failure to raise them in his opening brief. (*Estate of Moore* (2015) 240 Cal.App.4th 1101, 1106, fn. 3.)

We therefore conclude that Robert has not shown that the trial court abused its discretion by awarding attorney fees to Janice.

# X

## DISPOSITION

The order appealed from is reversed.  On remand, the trial court must enter a new order, not inconsistent with this opinion, awarding Janice the same dollar amount, but as damages and not as spousal support nor on a resulting trust theory.  In the interests of justice, each side shall bear its own costs.

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ       
P. J.

We concur:

McKINSTER    
           J.

CODRINGTON    
           J.